**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Douglas JARVIS, Defendant–Appellant.**

No. 91–5169.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 4, 1993.

Decided Oct. 19, 1993.

. Howard Mark Miller, St. Clair, Miller & Marx, P.C., Norfolk, VA, argued, for defendant-appellant.

Laura Marie Everhart, Asst. U.S. Atty., Norfolk, VA, argued (Richard Cullen, U.S. Atty., on brief), for plaintiff-appellee.

Before ERVIN, Chief Judge, and HALL and PHILLIPS, Circuit Judges.

## OPINION

ERVIN, Chief Judge:

Following trial by jury, Douglas Jarvis was convicted of one count of conspiracy to traffic in cocaine, 21 U.S.C. § 846; seven counts of possessing with intent to distribute cocaine, 21 U.S.C. § 841(a)(1); and five counts of travelling in interstate commerce to promote an unlawful activity, 18 U.S.C. § 1952(a)(3). His direct appeal presents three questions for decision: (1) whether the district court plainly erred by allowing Jarvis to proceed to trial on charges of conspiracy to distribute cocaine, in violation of the Double Jeopardy Clause of the Fifth Amendment; (2) whether the district court erred by failing to require the Government to prove that its case against Jarvis did not derive in part from testimony provided by Jarvis pursuant to a grant of immunity from prosecution; and (3) whether Jarvis was denied the effective assistance of counsel by his lawyer's failure to raise the foregoing immunity and double jeopardy defenses by motion.

Because we hold that Jarvis's conspiracy prosecution was undertaken in violation of the Double Jeopardy Clause, infecting the proceedings below with plain error, we vacate and remand his conviction and sentence on that count. After careful analysis of Jarvis's immunity agreement with the Government, we conclude that the agreement contemplated transactional, not use, immunity. A thorough review of the record reveals that the transactions thereby immunized were neither charged in the instant indictment nor prosecuted in the proceedings below. Accordingly, we hold that the district court did not err by failing to afford Jarvis a hearing at which the origins of the Government's case could be explored. Because we dispose of Jarvis's appeal through our analysis of his first two assignments of error, we decline to address his ineffective-assistance-of-counsel claim. We therefore affirm his twelve remaining convictions.

### I

The issues presented by this appeal rest upon procedural history of some complexity, which for clarity's sake we describe in three parts.

### A

In January 1987 Catherine Marie Parker was introduced to Douglas Jarvis at a night club in Virginia Beach, Virginia. One week later Parker obtained one-eighth of an ounce of cocaine from Jarvis. Parker and Jarvis began meeting regularly to use cocaine, with Jarvis supplying the drug. Their meetings continued until July 1988, when Parker introduced Jarvis to one Whitney, a high school

friend of Parker's. Jarvis told Whitney that he was searching for a new cocaine source, being no longer in contact with his former Virginia Beach supplier. Whitney informed Jarvis that she was living in Miami with Anibal Duarte, a cocaine dealer. Several days later, in an attempt to purchase cocaine from Duarte, Jarvis and Parker travelled to Florida. Duarte refused to meet with them on this journey.

In August 1988 Duarte contacted Parker and told her that he was now willing to sell cocaine to Jarvis, with Parker acting as intermediary. Later that month Jarvis sent Parker to Florida with $12,000, with which Parker purchased one-half kilogram of cocaine from Duarte. Parker returned to Virginia, where she delivered the cocaine to Jarvis. Following a second unsuccessful attempt to purchase cocaine from his new Florida connection, Jarvis had no further contact with Duarte until December 1988, when Jarvis invited him to Virginia. Jarvis introduced Duarte to his associates Alan Scott, Vaden Lee Williams, and Patricia Fruetel, who indicated that they were interested in purchasing kilogram quantities of cocaine from Duarte.

Beginning in January 1989, Jarvis began making regular trips to Florida, during which he purchased kilogram quantities of cocaine from Duarte. These trips took place in March 1989, during the summer of 1989, and, finally, in January 1990. Tony Joliff, an associate of Jarvis, also travelled to Florida in January, February, and March, 1989 at Jarvis's direction to obtain cocaine from Duarte. Scott, Williams, and Fruetel travelled to Florida at various times throughout this period, both in Jarvis's company and at his behest.

On January 19, 1990, Jarvis and Parker travelled to Florida to purchase cocaine from Duarte. Being unable to make arrangements with his usual supplier, Duarte contacted another cocaine dealer in Fort Lauderdale. Unbeknownst to Duarte, this individual, who already had been arrested himself, was cooperating with law enforcement authorities. After a number of telephone conversations, Duarte arranged a meeting with the arrested dealer. Jarvis and Duarte met with the cooperating dealer and two undercover Drug Enforcement Administration ("DEA") agents at a hotel in Fort Lauderdale on January 22, 1990. Following negotiations regarding the quantity of cocaine to be purchased and related financial matters, cocaine and money were exchanged, and Jarvis and Duarte were arrested. Jarvis was detained. Duarte, who agreed to cooperate with the Government, was released on bond.

In April 1990 Williams and Fruetel travelled to Florida in an attempt to purchase cocaine from Duarte. Duarte, now working with the DEA, introduced Williams and Fruetel to an undercover DEA agent. A cocaine transaction was arranged, and Williams and Fruetel were arrested by Florida authorities on April 4, 1990.

On June 27, 1990, a grand jury in the Southern District of Florida returned an indictment charging Jarvis with (1) one count of conspiring to possess with intent to distribute five kilograms of cocaine in violation of 21 U.S.C. § 846; and (2) one count of conspiring to possess and of actually possessing with intent to distribute five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The conspiracies charged in both counts were alleged to have begun on January 19, 1990 and ended on January 22, 1990. . In November 1990 Jarvis was convicted of the first conspiracy count and acquitted of both the conspiracy and substantive portions of the second count. The Court of Appeals for the Eleventh Circuit affirmed Jarvis's conspiracy conviction on October 21, 1992, *United States v. Jarvis*, 978 F.2d 720 (11th Cir.1992) (unpublished opinion), and the Supreme Court denied certiorari, *Jarvis v. United States*, —— U.S. ——, 113 S.Ct. 3046, 125 L.Ed.2d 731 (1993).

### B

In February 1988, before most of the events described above occurred, Jarvis contacted authorities in the Federal Bureau of Investigation's Eastern District of Virginia offices and offered to provide the Bureau with information about the narcotics-distribution activities of various individuals in the Norfolk/Virginia Beach area. In exchange for this information, FBI agents promised

that if, in the course of sharing his knowledge with them, Jarvis admitted his own involvement in past crimes, he would not be prosecuted for them. Specifically, in an FBI memorandum dated February 11, 1988, Special Agent Robert J. Arnold advised Jarvis that the Bureau's interviews with him were being conducted predicated upon the condition of

> [h]is providing complete and truthful details regarding all of his narcotics activities in return for his not being prosecuted by the Norfolk, Virginia, Police Department, or the Federal Government in the Eastern District of Virginia for any activities which he relates to the interviewers during the interview.

Most of the information Jarvis related to the FBI dealt with marijuana and cocaine distribution by various persons in the late 1970s and early 1980s. In the course of his testimony, Jarvis identified three individuals who either bought cocaine or marijuana from him or used the drugs with him during those years. Although Jarvis admitted to the authorities that he was still a cocaine user, the last cocaine sales he admitted to having made occurred prior to April 1987.

### C

On April 25, 1991, a grand jury in the Eastern District of Virginia returned a forty-count indictment against Jarvis and four other defendants. Jarvis was charged with (1) one count of conspiring to distribute in excess of five kilograms of cocaine, 21 U.S.C. § 846; (2) ten counts of possessing with intent to distribute cocaine, 21 U.S.C. § 841(a)(1); and (3) six counts of travelling in interstate commerce with intent to promote or facilitate the promotion of an unlawful activity, 18 U.S.C. § 1952(a)(3). Jarvis's co-defendants all entered guilty pleas on the remaining twenty-three counts.

On July 8, 1991 the district court held a hearing to entertain pretrial motions by the defendants. Jarvis's counsel moved the court for a continuance, on the ground that he had enjoyed no access to the transcripts from Jarvis's previous trial in the Southern District of Florida. This motion was denied. Jarvis's trial commenced on July 10, 1991.

On July 16, 1991, the Government rested and the district court denied Jarvis's motion for judgment of acquittal on the basis of his immunity agreement with the Federal Bureau of Investigation. On July 19, 1991, Jarvis was found guilty of (1) the single 21 U.S.C. § 846 conspiracy count; (2) seven of the ten 21 U.S.C. § 841(a)(1) counts; and (3) five of the six 18 U.S.C. § 1952(a)(3) counts lodged against him in the indictment. On October 9, 1991, the district court sentenced Jarvis to 262 months' imprisonment on the conspiracy count, to be followed by ten years of supervised release. He was sentenced to equal or lesser terms on the twelve substantive counts. The court ordered all the sentences to run concurrently with one another and with Jarvis's sentence from his conviction in the Southern District of Florida. Finally, Jarvis was ordered to pay a special assessment of fifty dollars on each count of conviction.

This appeal followed.

### II

In his first assignment of error, Jarvis contends that his prosecution for conspiracy violated the Double Jeopardy Clause of the Fifth Amendment.

### A

Before reviewing the merits of Jarvis's double jeopardy claim, we must consider the Government's argument that Jarvis has forfeited any double jeopardy objection he might have raised against the initiation of the conspiracy prosecution by failing to raise the issue by motion before or during his trial.

There is no question that the Federal Rules of Criminal Procedure contemplate the raising of affirmative defenses or objections by motion at some time before or during trial. Rule 12(b), which governs pretrial motions, provides that

> [a]ny defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion.... The following must be raised prior to trial:

(1) Defenses and objections based on defects in the institution of the prosecution; or

(2) Defenses and objections based on defects in the indictment or information (other than that it fails to show jurisdiction in the court or to charge an offense which objections shall be noticed by the court at any time during the pendency of the proceedings)[.]

Fed.R.Crim.P. 12(b)(1), (2). The 1944 Advisory Committee's Note on Rule 12(b)(1) and (2) sheds considerable light on the Rule's interpretation. As the Advisory Committee observed, subdivisions (1) and (2) of the rule classify into two groups all objections and defenses to be interposed by motion pursuant to Rule 12(b):

In one group are defenses and objections which must be raised by motion, failure to do so constituting a waiver. In the other group are defenses and objections which at the defendant's option may be raised by motion, failure to do so, however, not constituting a waiver.

In the first of these groups are included all defenses and objections that are based on defects in the institution of the prosecution or in the indictment and information, other than lack of jurisdiction or failure to charge an offense. All such defenses and objections must be included in a single motion. Among the defenses and objections in this group are the following: Illegal selection or organization of the grand jury, disqualification of individual grand jurors, presence of unauthorized persons in the grand jury room, other irregularities in grand jury proceedings, defects in indictment or information other than lack of jurisdiction or failure to state an offense, etc. . . .

In the other group of objections and defenses, *which the defendant at his option may raise by motion before trial,* are included all defenses and objections which are capable of determination without a trial of the general issue. *They include such matters as former jeopardy,* former conviction, former acquittal, statute of limitations, immunity, lack of jurisdiction, failure

of indictment or information to state an offense, etc. . . . .

Fed.R.Crim.P. 12(b)(1), (2) advisory committee's note (parenthetical citations omitted) (emphasis added).

■ As the Advisory Committee's Note makes clear, former jeopardy is a defense or objection "which the defendant at his option *may* raise by motion before trial." *Id.* The Rule plainly creates a dichotomy between objections and defenses which "must" be raised before trial, and those which may, but need not necessarily, be so raised. While it is true that "[t]he initial burden of raising and pleading [a] double jeopardy claim lies . . . with the defendant," *United States v. Ragins,* 840 F.2d 1184, 1191 (4th Cir.1988), failure to do so before trial does not result in an automatic forfeiture of the double jeopardy defense.

■ Rule 12(b) is otherwise silent about when defenses and objections capable of determination without the trial of the general issue must be raised. We believe that the rule adopted by the majority of our sister circuits—one that a leading commentator has dubbed a "sensible resolution" of the matter—is a wise one: such defenses and objections as former jeopardy, former acquittal, former conviction, the statute of limitations, and immunity must be raised at some time in the proceedings before the district court on pain of forfeiture. *See McClain v. Brown,* 587 F.2d 389, 391 (8th Cir.1978) (stating that defense of former jeopardy must be raised at trial); *United States v. Scott,* 464 F.2d 832, 833 (D.C.Cir.1972) (same); *Grogan v. United States,* 394 F.2d 287, 289 (5th Cir.1967), *cert. denied,* 393 U.S. 830, 89 S.Ct. 97, 21 L.Ed.2d 100 (1968) (same); *Barker v. Ohio,* 328 F.2d 582, 584 (6th Cir.1964) (same); Charles A. Wright, *Federal Practice & Procedure: Criminal* § 193, at 705–06 (1982 & Supp. 1992) ("sensible resolution").

Applying this rule to the instant case, we find that Jarvis forfeited consideration of the merits of his former jeopardy claim by the district court when he failed to raise the defense at some point during the proceedings below.

## B

■ Because Jarvis failed to object to his prosecution on former jeopardy grounds at some point during the proceedings below, and therefore forfeited the objection, we may review the proceedings only for plain error in this respect. Plain error is an exception to the general rule that entitlement to appellate review is dependent upon a party's lodging a contemporaneous objection in the tribunal of first instance. Rule 52(b) of the Federal Rules of Criminal Procedure provides us with a limited power to correct errors that were forfeited because not raised at some time during the proceedings before the district court. *See* Fed.R.Crim.P. 52(b); *United States v. Olano,* — U.S. —, —, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993). Thus, the authority created by Rule 52(b) is limited to "[p]lain errors or defects affecting substantial rights" that were not brought to the trial court's attention. Fed.R.Crim.P. 52(b). Rule 52(b) is to be applied "sparingly" and saves only "particularly egregious errors" in those circumstances "in which a miscarriage of justice would otherwise result." *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985); *see United States v. Reedy,* 990 F.2d 167, 168 n. 2 (4th Cir.1993); *United States v. Hall,* 989 F.2d 711, 718 n. 12 (4th Cir.1993). As the Supreme Court recently observed, Rule 52(b)

> leaves the decision to correct the forfeited error within the sound discretion of the Court of Appeals, and the court should not exercise that discretion unless the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings."

*Olano,* — U.S. at —, 113 S.Ct. at 1776 (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936)). With these precepts in hand, we turn to a consideration of the merits of Jarvis's assignment of error.

■ The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. As we noted in *United States v. Ragins,* 840 F.2d 1184 (4th Cir.1988), the Supreme Court has made clear that the Fifth Amendment's double jeopardy guarantee creates "not only the right to be free from multiple punishments for the same offense, but also the right to be immune from multiple prosecutions for the same offense." *Id.* at 1192; *see Abney v. United States,* 431 U.S. 651, 660–61, 97 S.Ct. 2034, 2040–41, 52 L.Ed.2d 651 (1977). In general, double jeopardy bars a succeeding prosecution if the proof actually used to establish the first offense would suffice to convict the defendant of the second offense. *Ragins,* 840 F.2d at 1188; *Jordan v. Virginia,* 653 F.2d 870, 873–74 (4th Cir.1980).

■ Applying these principles, we observe that the first step in determining on appeal whether a succeeding prosecution was barred by the Double Jeopardy Clause is to decide whether the Government used the evidence that established the first offense to obtain a conviction on the second offense as well. In *Ragins* we stated that, in most instances, this "same evidence" test, "pragmatically applied," provides "adequate protection against successive prosecutions." *Ragins,* 840 F.2d at 1188. Yet we further noted that successive conspiracy prosecutions present factual difficulties that the "same evidence" test may address inadequately:

> In conspiracy cases, ... the peculiar characteristics of the offense itself present special problems that require application of an even more flexible test. The gist of the crime of conspiracy is the agreement to commit unlawful acts. But the same conspiracy may be established by different aggregations of proof, for a single agreement may continue for an extended period of time and involve the commission of numerous criminal acts. Strict application of the "same evidence" test to successive conspiracy charges would therefore permit the government to subject an accused to repeated prosecutions for what is in reality the same criminal conspiracy, simply by selecting a different set of overt acts for each indictment. For this reason, this circuit, along with most others, has adopted a multi-pronged "totality of the circumstances" test to determine whether two successive conspiracy counts charge the "same offense" within the meaning of the

double jeopardy clause. Under this test, the court is to consider five factors in assessing the validity of a double jeopardy claim lodged against successive conspiracy charges: (1) the time periods covered by the alleged conspiracies; (2) the places where the conspiracies are alleged to have occurred; (3) the persons charged as co-conspirators; (4) the overt acts alleged to have been committed in furtherance of the conspiracies, or any other descriptions of the offenses charged which indicate the nature and scope of the activities being prosecuted; and (5) the substantive statutes alleged to have been violated.

*Id.* (citing *Iannelli v. United States,* 420 U.S. 770, 777, 95 S.Ct. 1284, 1289, 43 L.Ed.2d 616 (1975); *United States v. MacDougall,* 790 F.2d 1135, 1144 (4th Cir.1986)). We now apply this test to the multiple conspiracy charges lodged against Jarvis.

The 21 U.S.C. § 846 conspiracy of which Jarvis was convicted in the Southern District of Florida was alleged to have taken place over a four-day period—January 19–22, 1990. The conspiracy of which he was convicted in the Eastern District of Virginia was alleged to have occurred between June 1988 and April 25, 1991. Thus, the conspiracy prosecuted in the Eastern District of Virginia completely embraced the time period covered by the Southern District of Florida conspiracy.

The places where the two conspiracies were alleged to have been formed and carried out occupy the same relationship to one another as the times in which they occurred. The four-day conspiracy charged in the Southern District of Florida indictment allegedly took place wholly in Miami and Fort Lauderdale. The broader conspiracy charged in the instant indictment allegedly occurred in the Norfolk–Virginia Beach area, in Miami and Fort Lauderdale, and in interstate travel between Florida and Virginia. Thus, we view the Eastern District of Virginia conspiracy as having taken place, at least on January 19–22, 1990, in the same place as the earlier conspiracy.

The Government correctly notes that the only co-conspirator *charged* in both indictments was Jarvis. Although *Ragins* articulates the third factor in the five-part test as "persons charged as co-conspirators," our examination of the conspiracy's human scope need not be so restricted. In *United States v. MacDougall,* 790 F.2d 1135 (4th Cir.1986), our decision adopting the five-factor test in this circuit, we described the individuals to be considered when evaluating the extent of a conspiracy as "the persons *acting* as co-conspirators." *Id.* at 1144 (emphasis added). Thus, we are permitted to inquire whether the persons acting as co-conspirators in the Southern District of Florida were in any respect the same as those acting in the Eastern District of Virginia, whether or not they were ultimately charged in either indictment.[1] Reviewing the persons allegedly involved in both conspiracies, we find considerable overlap between the two cases. Anibal Duarte was clearly Jarvis's Miami cocaine source in both prosecutions. Catherine Parker accompanied Jarvis to Florida to obtain cocaine within the time periods encompassed by both conspiracies. Scott, Williams, Fruetel, and Joliff—three of whom were charged in the Eastern District of Virginia proceedings—all traveled to Florida on various occasions in 1989 and 1990 at Jarvis's behest to obtain cocaine from Duarte. Thus, we have no difficulty in concluding that "the persons acting as co-conspirators," *id.,* were in large measure the same for purposes of both conspiracy prosecutions.

We can dispose rapidly of the last two inquiries in the *MacDougall/Ragins* analysis. The overt acts charged in the Southern District of Florida indictment are the same as those alleged in Overt Act No. 26 of Count 1 of the instant indictment. Finally, the substantive statute charged in both indictments was precisely the same: 21 U.S.C. § 841(a)(1).

■ Thus, we find that, within each of the five factors enunciated in *MacDougall* and

---

1. Our use of the word "charged" in articulating the third part of the five-factor test in *Ragins* should not be understood as meaning that only those persons formally charged as co-conspirators in the first and second indictments may be considered for purposes of the test. We simply meant that any overlap between those persons asserted to have been participating in the relevant conspiracies as co-conspirators could be pertinent to the "same evidence" analysis.

*Ragins*, there is considerable similarity between the Florida prosecution and the Virginia prosecution. Jarvis and his cohorts engaged in a long-term conspiracy, formed and executed partly in Virginia and partly in Florida, consisting of many separate overt acts of illegal narcotics trafficking. When the co-conspirators were finally brought to justice, the Government selected a single overt act from the series and prosecuted it as a separate conspiracy in the Southern District of Florida. Then, as new facts came to light, the Government prosecuted Jarvis again in the Eastern District of Virginia, this time attacking the entire conspiracy, *including* the events in Florida for which convictions already had been obtained. Although the only common defendant in these separate prosecutions was Jarvis, the same evidence, and the same principal players, were examined and their testimony deployed to obtain two convictions against Jarvis.

The Government contends that the Florida conspiracy and the Virginia conspiracy were separate, concurrent offenses. Our careful review of the record reveals no evidence of separate agreements to violate the narcotics laws of the United States. The trial testimony of the participants clearly indicates that the series of overt acts charged in both the Virginia and Florida prosecutions were bound together by a single agreement to transport cocaine from Florida for distribution in Virginia. Our examination of the record in light of the five *MacDougall/Ragins* factors convinces us that the prosecutions were lodged against a single conspiracy.

Therefore, we conclude that Jarvis's indictment on conspiracy charges in the Eastern District of Virginia was simply an attempt to reprosecute the defendant for an offense of which he already had been convicted in the Southern District of Florida. The fact that the second prosecution alleged overt acts over and above those cited in the Florida indictment is irrelevant, so long as the conduct for which Jarvis was first prosecuted constitutes the entirety of the agreement element of the conspiracy alleged in the Virginia indictment. We find that it does constitute the entirety of the agreement element of the Virginia conspiracy, because the indictment alleged the existence of the same agreement already prosecuted in Florida. Accordingly, Jarvis's conspiracy prosecution in the Eastern District of Virginia violated the Double Jeopardy Clause.

C

■ We must now consider whether it constituted "plain error" for the district court to proceed with Jarvis's conspiracy prosecution despite the absence of a timely objection from Jarvis. In *United States v. Olano*, ——— U.S. ———, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), the Supreme Court carefully parsed the requirements of Rule 52(b). For plain error to taint trial proceedings, the Court stated, (1) there must be present an "error," defined as "[d]eviation from a legal rule," *id.* at ———, 113 S.Ct. at 1777, which the defendant has not waived outright; (2) the error must be "plain," that is, "clear under current law," *id.;* and (3) the error must "affec[t] substantial rights," *id.* at ———, 113 S.Ct. at 1777–78.

■ With respect to the first of these considerations, we have no difficulty concluding that the lodging of multiple prosecutions against a single defendant for the same offense constitutes "[d]eviation from [the] legal rule" set forth in the text of the Double Jeopardy Clause. By operation of Rule 12(b) of the Federal Rules of Criminal Procedure, Jarvis forfeited, but did not "intentional[ly] relinquish[ ] or abandon[ ]," *id.* at ———, 113 S.Ct. at 1777 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)), i.e., waive outright, his double jeopardy argument by failing to lodge a contemporaneous objection to his conspiracy prosecution at some time during the proceedings against him in the Eastern District of Virginia. With respect to the second consideration, it is abundantly "clear under current law" that multiple prosecutions which run afoul of the Double Jeopardy Clause are constitutionally forbidden. Finally, with respect to the third consideration, we cannot doubt that the bringing of a second conspiracy prosecution against Jarvis in the Eastern District of Virginia clearly "affec[ted]" the defendant's "substantial rights." Speaking for the Court in *Olano*, Justice O'Connor

wrote that "in most cases[,]" the phrase "affecting substantial rights" generally "means that the error must have been prejudicial: It must have affected the outcome of the District Court proceedings." *Id.*, — U.S. at —, 113 S.Ct. at 1777–78.[2] It is difficult to imagine an error capable of more drastically effecting the outcome of judicial proceedings than permitting the Government to obtain a conviction for an offense whose prosecution was barred *ab initio* by the constitutional guarantee of freedom from being "twice put in jeopardy of life or limb." U.S. Const. amend. V. We therefore conclude that permitting Jarvis's prosecution for conspiracy to proceed in the Eastern District of Virginia constituted "plain error."

■■■ "Rule 52(b) is permissive, not mandatory." *Olano*, — U.S. at —, 113 S.Ct. at 1778. Even after finding, as we have herein, that the basic requirements of the rule are satisfied and that "plain error" is present, our exercise of sound discretion to correct the plain error below is guided by certain prudential principles. As Justice O'Connor made clear in *Olano, see id.* at —, 113 S.Ct. at 1779, the standard that should guide the exercise of remedial discretion under Rule 52(b) was articulated in *United States v. Atkinson*, 297 U.S. 157, 56 S.Ct. 391, 80 L.Ed. 555 (1936). We should correct a plain forfeited error affecting substantial rights if the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 160, 56 S.Ct. at 392.[3]

An error may "seriously affect the fairness, integrity or public reputation of judicial proceedings" independent of the defendant's innocence. Conversely, a plain error affecting substantial rights does not, without more, satisfy the *Atkinson* standard, for otherwise the discretion afforded by Rule 52(b) would be illusory.

*Olano*, — U.S. at —, 113 S.Ct. at 1779 (quoting *Atkinson*, 297 U.S. at 160, 56 S.Ct. at 392).

Having found plain error here, we must decide whether to exercise our discretion under Rule 52(b) to vacate Jarvis's conspiracy conviction. The right violated by Jarvis's prosecution for conspiracy in the Eastern District of Virginia was a right of constitutional dimension. The vindication of constitutional rights is among the most exalted callings of Article III courts. We cannot imagine a course more likely to "seriously affect the fairness, integrity, or public reputation of judicial proceedings," *Olano*, — U.S. at —, 113 S.Ct. at 1779, than for us to permit Jarvis's conspiracy conviction, obtained in such flagrant violation of the Double Jeopardy Clause, to stand.

Jarvis's conspiracy prosecution in the Eastern District of Virginia constitutes a "particularly egregious error," *Young*, 470 U.S. at 15, 105 S.Ct. at 1046, that has caused a "miscarriage of justice," *id.*, in the instant case. Because the conspiracy count charged the "same offense," *Ragins*, 840 F.2d at 1188; using the "same evidence," *Ragins*, 840 F.2d at 1188, as the conspiracy of which Jarvis was convicted in the Southern District of Florida, we hereby exercise our discretion under Rule 52(b) to correct the district court's plain error in permitting the Government to prosecute Jarvis for conspiracy. Accordingly, we vacate his conspiracy conviction and the sentence that resulted therefrom, and remand the cause for resentencing.

## III

■■■ We now turn to Jarvis's contention that the district court erred by failing to

---

**2.** The Court expressly declined to consider whether the phrase "affecting substantial rights" is always "synonymous with 'prejudicial.'" *Olano*, — U.S. at —, 113 S.Ct. at 1778. The Court speculated that "[t]here may be a special category of forfeited errors that can be corrected regardless of their effect on the outcome...." *Id.*

**3.** The Supreme Court has repeatedly quoted the *Atkinson* language in describing plain-error review. *See United States v. Frady*, 456 U.S. 152,

163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982); *Silber v. United States*, 370 U.S. 717, 718, 82 S.Ct. 1287, 1288, 8 L.Ed.2d 798 (1962) (per curiam); *Johnson v. United States*, 318 U.S. 189, 200, 63 S.Ct. 549, 554, 87 L.Ed. 704 (1943); *United States v. Socony–Vacuum Oil Co.*, 310 U.S. 150, 239, 60 S.Ct. 811, 851, 84 L.Ed. 1129 (1940); *see also Connor v. Finch*, 431 U.S. 407, 421 n. 19, 97 S.Ct. 1828, 1837 n. 19, 52 L.Ed.2d 465 (1977) (civil appeal).

conduct a hearing at which the Government would have shouldered the burden of proving that all the evidence used against him derived from statements independent of those he made pursuant to his immunity grant.

The Government raises the same objection to our consideration of this argument as it did with respect to Jarvis's double jeopardy contention, suggesting that because Jarvis failed to move that the indictment against him be quashed before trial on grounds of immunity, the assignment of error has been forfeited. For reasons we discussed at length in Part II above, we reject this argument. The 1944 Advisory Committee's Note on Rule 12(b) of the Federal Rules of Criminal Procedure includes an objection of immunity among those objections and defenses "which the defendant at his option may raise by motion before trial" because they are "capable of determination without a trial of the general issue." Fed.R.Crim.P. 12(b)(1), (2) advisory committee's note. Failure to raise a contemporaneous objection of immunity *before* trial does not constitute a forfeiture of the objection because the defendant is not forced by Rule 12(b) to assert the objection before the proceedings against him commence. Under the rule we adopted in Part II.A above, however, failure to raise the immunity defense at some point during the proceedings before the district court would result in a forfeiture of the objection. Because Jarvis did indeed raise his immunity defense when he moved for judgment of acquittal at the close of the prosecution's case-in-chief, we find that he met the requirements of Rule 12(b). Accordingly, we may review Jarvis's properly preserved assignment of error on this point *de novo,* because no forfeiture of the immunity defense occurred below.

■ It is true that, once a defendant demonstrates that he previously testified under a grant of immunity purporting to protect him against the subsequent use of his testimony as a source for evidence, the district court must hold a hearing at which the prosecution carries "the heavy burden of proving that all of the evidence it proposes to use was derived from ... sources" independent of the immunized testimony. *Kastigar*

*v. United States,* 406 U.S. 441, 461–62, 92 S.Ct. 1653, 1665, 32 L.Ed.2d 212 (1972) (footnote omitted). In *Kastigar* the Supreme Court distinguished between "use" immunity and the broader concept of "transactional" immunity. Transactional immunity protects an individual against prosecution for any crime arising from the substance of his immunized testimony. Use immunity, on the other hand, only protects against the Government's use of immunized testimony as a source of evidence, leaving the Government free to use any other evidence to prosecute. *See United States v. Harris,* 973 F.2d 333, 336 (4th Cir.1992). The holding of a so-called *Kastigar* hearing is predicated entirely upon the assumption that the immunity granted the defendant was "use" immunity, because it is only in such a case that the need arises for divining whether evidence deployed in a prosecution stems from immunized testimony.

■ In order to determine whether the district court committed plain error by failing to hold a *Kastigar* hearing, as Jarvis suggests, we must ascertain whether his immunity agreement with the Government promised him "use" or "transactional" immunity. The relevant portion of Jarvis's agreement with the FBI stated that his voluntary interview with federal authorities

was being conducted predicated upon Jarvis providing complete and truthful details regarding all of his narcotics activities *in return for his not being prosecuted* by the Norfolk, Virginia, Police Department, or the Federal Government in the Eastern District of Virginia *for any activities which he relates to the interviewers during the interview.*

(emphasis added).

It is plain that Jarvis's immunity agreement contemplated transactional, not use, immunity. The agreement purports to protect Jarvis against *prosecution* for any offense whose commission came to the attention of the FBI through the substance of Jarvis's immunized testimony. Because the promised immunity was not "use" immunity, the necessity of holding a *Kastigar* hearing never arose.

Moreover, the transactional immunity afforded Jarvis by the Government did not shield him from prosecution for any matters other than those disclosed pursuant to the immunity grant. *See Kastigar,* 406 U.S. at 453, 92 S.Ct. at 1661; *Rowe v. Griffin,* 676 F.2d 524, 526 (11th Cir.1982); *United States v. Weiss,* 599 F.2d 730, 737 n. 14 (5th Cir. 1979). The scope of the immunity agreement extended only to crimes committed before the date of his interview with FBI authorities—February 11, 1988. None of the crimes charged in the instant indictment occurred before June 1988. While a grant of use immunity might have prohibited the Government from using evidence disclosed in Jarvis's FBI interview either directly or derivatively, his grant of transactional immunity simply prohibits the Government from prosecuting him at any time with respect to any incriminating matters Jarvis disclosed. Even if the district court had held a hearing to determine whether the Government deployed Jarvis's immunized testimony in its case-in-chief, the nature of the immunity granted Jarvis would have prevented the district court from affording him any relief. Accordingly, we hold that the district court did not err by failing to hold a *Kastigar* hearing after Jarvis moved for judgment of acquittal on grounds of immunity.

### IV

We decline to address Jarvis's contention that his attorney's failure to raise the objections of immunity and double jeopardy directly by motion deprived him of the effective assistance of counsel in violation of the Sixth Amendment. We have disposed of both of Jarvis's assignments of error on their merits, reviewing the district court's action for plain error despite his attorney's failure to raise objections before trial. Therefore, we need not consider whether Jarvis's counsel was ineffective in this respect.

### V

For the reasons stated in Part II *supra,* Jarvis's single conviction of conspiring to distribute and to possess with intent to distribute cocaine, 21 U.S.C. § 846, and his sentence therefor are hereby vacated. Accordingly, we remand Jarvis's case for resentencing in light of our holding herein.

For the reasons stated in Part III *supra,* Jarvis's twelve substantive convictions of possessing with intent to distribute cocaine, 21 U.S.C. § 841(a)(1), and of interstate travel with intent to promote or facilitate the promotion of an unlawful activity, 18 U.S.C. § 1952(a)(3), are hereby affirmed.

*VACATED AND REMANDED IN PART AND AFFIRMED IN PART.*