Vacated by Supreme Court, October 3, 2005

**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 03-4630

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JIMMY RICHARD HUSBAND,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Newport News. Rebecca Beach Smith, District Judge. (CR-02-125)

Argued: September 30, 2004          Decided: January 11, 2005

Before WILKINSON, GREGORY, and SHEDD, Circuit Judges.

Affirmed by unpublished opinion. Judge Gregory wrote the opinion, in which Judge Wilkinson and Judge Shedd joined.

**ARGUED:** Marcia Gail Shein, Decatur, Georgia, for Appellant. Arenda L. Wright Allen, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee. **ON BRIEF:** Paul J. McNulty, United States Attorney, Michael J. Elston, Assistant United States Attorney, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

GREGORY, Circuit Judge:

In April 2003, Jimmy Richard Husband ("Husband" or "Appellant") pled guilty in the United States District Court for the Eastern District of Virginia to eight counts of sexual exploitation of a minor in violation of 18 U.S.C. § 2251(a) and (d). The court accepted Husband's plea and subsequently sentenced him to 87 months of imprisonment for each of the eight counts and ordered that the sentences be run consecutively, for a total of 696 months, followed by eight three-year periods of supervised release, also to be run consecutively. Husband timely appeals on five grounds: (1) that he was prosecuted and convicted of crimes for which the governing statute of limitation had expired; (2) that his plea was not voluntary and knowing under Fed. R. Crim. P. 11 because the court misinformed him of the actual penalty he could face; (3) that the court failed to establish an adequate factual basis for accepting his plea; (4) that the court violated the Sentencing Guidelines by sentencing him to consecutive rather than concurrent terms; and (5) that his counsel ineffectively assisted him because his counsel failed to raise and argue the statute of limitations defense.

None of Husband's grounds for appeal is meritorious. Accordingly, we affirm.

The immediately following facts are admitted by Appellant: "Jane Doe,"[1] Husband's daughter by adoption and the primary victim in this case, was born in late 1979. In 2001, Husband and his family relocated to Newport News, Virginia from West Monroe, New York. On January 8, 2002, a videotape was discovered that depicted eight scenes of Jane Doe in sexually explicit activities. Three days later, Husband was arrested and charged with possession of child pornography.

The record makes plain that these events then occurred. On October 15, 2002, a federal grand jury returned a twenty-count indictment against Husband, alleging seventeen counts of sexual exploitation of a minor in violation of 18 U.S.C. § 2251(a) and (d), one count of transportation of child pornography in violation of 18 U.S.C. § 2252A(a)(1) ("Count 18"), and two counts of possession of child pornography, both in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2256(1) and (2) ("Counts 19 and 20"). On December 16, 2002, Husband pled not guilty to all counts, and a jury trial was scheduled. On March 27, 2003, after numerous pretrial motions and pleadings, the district court dismissed the last nine sexual exploitation counts upon the United States' motion

---

[1]Out of respect of the victim, we will attempt to minimize revelation of details that would reveal her identity. Unfortunately, the details of this case often make it difficult to do so.

because the conduct charged in those counts took place after Doe turned eighteen years old, leaving only counts one through eight to survive. On April 7, 2003, immediately before the jury trial was scheduled to begin, and without the benefit of a plea agreement, Husband pled guilty to the sexual exploitation counts remaining against him. The court subsequently dismissed counts eighteen through twenty with prejudice.

The facts that are most relevant for this appeal took place at the plea hearing. After the judge established Husband's competence, Husband indicated that he wished to plead guilty. The following exchange then occurred between the court and Husband:

> THE COURT: And the maximum possible penalty on each of these counts, then, Mr. Husband, is a maximum of 20 years imprisonment and a minimum of ten years. Do you understand that penalty?
> THE DEFENDANT: Yes, ma'am.

J.A. 35. After establishing that Husband would be a felon and lose substantial rights if he pled guilty, the court then informed him that, "in relation to any sentence that the court will impose, the United States sentencing guidelines are in effect[,]" J.A. 35-36, and that, "ultimately under the law, it is up to the court to sentence you under the federal sentencing guidelines." J.A. 46. Husband acknowledged his assent, admitting that he had discussed the Guidelines with his attorney, and also acknowledged that, under the Guidelines he would be sentenced based not only on "the crimes to which you are pleading guilty, but all of your relevant criminal

4

conduct in regard to the crimes to which you are pleading guilty[.]" J.A. 36. The district court then reaffirmed that "you are pleading guilty to the indictment, counts 1 through 8, and those all involve charges of sexual exploitation of a minor[,]" J.A. 37, and restated each count. The judge then clarified that Husband would be subject to supervised release, "not more than three years on each count." J.A. 42. After noting that Husband would not later be able to withdraw his guilty plea because he did not like the sentence, the following statements were made:

> THE COURT: In other words, without a background presentence report, Mr. Husband, the only promise that I can make to you today is that your sentence on counts 1 through 8 would be somewhere between a minimum of 10 years and a maximum of 20; do you understand?
> THE DEFENDANT: Yes, ma'am.

J.A. 47. Finally, after ensuring that Husband had no questions about the sentencing guidelines or their application to his case, and ensuring with Husband's attorney that no meritorious defenses existed, the district court finally allowed Husband to plead guilty.

The government then proffered evidence of Husband's guilt. The evidence included a videotape of the defendant sexually exploiting his minor daughter on multiple occasions in their New York home. The videotape was discovered by Husband's other daughter on January 8, 2002 in Newport News, Virginia. Also included was an oral confession by Husband that he engaged in sexual activity with Doe and videotaped it over a five- to six-year

5

period.  Husband also handwrote a two-page statement corroborating his oral admissions and noting that his sexual desire for Doe began when she was "about six or eight."  J.A. 53.[2]  After the proffer, the following exchange occurred:

> THE COURT: All right....  Mr. Collins, you have heard what the United States claims it could prove had you called upon it to present a case against this defendant. Do you agree with the proffer?
> MR. COLLINS: I agree that would be their evidence, yes ma'am.
> THE COURT: Mr. Husband, do you agree with the proffer?
> THE DEFENDANT: Yes, ma'am.
> THE COURT: Did you still wish to plead guilty?
>
> MR. HUSBAND: Yes, ma'am.
> THE COURT: All right.  Then, based upon your guilty pleas and the government's proffer of evidence and your agreement therewith, I would find as a fact that you did commit the sexual exploitation of a minor, as set forth in counts 1 through 8 of the indictment, and I accept your guilty pleas.

J.A. 58-59.

The Presentence Investigation Report ("PSR") concluded that the offenses occurred in 1995 and 1996, so the appropriate Guidelines were from 1995, which relied on a statutory scheme with a maximum penalty of 10 years per count (not 20, as the judge stated, apparently relying upon a later version of the Guidelines). The PSR also found that the offense level was 27 and that Husband's criminal history category was I, which totaled 70-87 months, and

---

[2]His written admission, however, claimed "oral sex was never done to climax, and there was never penetration of her vagina or anus by me or any other object."  J.A. 54.  The government proffered a number of witnesses who would refute this claim.

6

that an upward departure may be warranted.  The government filed its position on Husband's sentence on June 30th, and Husband filed a "Response... to the Government's Motion for Upward Departure" on July 9th.

The sentencing hearing took place on July 15th, 2003. Husband's counsel did not object to the PSR.  He did, however, say he spoke with someone in the probation office, "who assured us that the standard is concurrent sentences."  J.A. 117.  The judge interrupted immediately, stating,

> Im not going to accept any such argument on the record.... I want to make the record clear, there was no plea agreement whatsoever in this case.... I asked him if any promise had been made to him in return for the plea, and he said no.  And I made it clear to him that he faced 20 years.

J.A. 117.  After more discussion by the judge as to why a probation officer's statements were inapposite, Husband's counsel replied, "I just wanted the court to be aware that that was a primary consideration in the entering of a plea," J.A. 118, whereupon the judge cut counsel off again, making clear that the court would not hear such arguments:

> THE COURT:  Frankly, if you want to know the truth, it matters not to me, because if that was a primary consideration, then that should have been made known to the court, and it was never made known to the court.... I know what the plea colloquy was, and I know that it was never discussed that sentences would run concurrently. I advised him that he could get 20 years on each count of conviction.  That's what he was advised of.

        MR. COLLINS: Yes, ma'am.  Nothing further.
        THE COURT: All right.

J.A. 118-19.

    In support of its request for an upward departure, the
government called four witnesses – the case agent, the victim, the
victim's mother, and a clinical social worker – to testify to the
especially heinous and prolonged nature of the sexual abuse.  We
will spare the reader the details by noting only that the evidence
was, simply put, sad, horrible, and clearly damning.

    The court took great pains to establish adequate grounds for
Husband's sentence by noting that the prolonged and heinous and
degrading behavior over an extremely long period of time along with
the repetitive nature of the conduct was sufficient to upwardly
depart.  But, it generally appears that, in fact, the court never
officially granted the motion for upward departure.  See infra n.
7.  Rather, the court simply sentenced Husband to 87 months for
each count to run consecutively for a total of 696 months, in
apparent belief that this was appropriate absent an upward
departure.  In justifying the decision, the court noted,

        So basically I would find that there are all of these
        grounds to depart upward.  If for some reason the
        consecutive sentences don't hold, I want to make it clear
        that this would be an alternative grounds for the court
        to depart upward.  However, I'm of the opinion that in
        this particular case I do not believe that the sentence
        imposed on the counts and letting them run concurrently
        would be at all adequate under the factors set forth in
        the law.  The sentence would be somewhere between – 70 to
        87 months is the guideline range, and certainly an 87-
        month sentence is not sufficient to punish, to remedy

8

> this conduct, to meet the heinous activity that has occurred in this particular case. . . . the thrust of this is that the court can run the sentences consecutive if necessary to achieve the appropriate total punishment, considering all of the matters that I have found as a fact here today, which are basically facts in the presentence report. . . . the way I would propose to proceed is to sentence him within the guidelines on each of the counts and to run those sentences consecutively.

J.A. 124-26. Again, Husband did not object. Now, however, he appeals on the above-stated grounds.

## II.

We now address each of Husband's arguments in turn. The short answer is that we affirm on all counts.

## A.

Husband first argues that the applicable statute of limitation had expired, and thus that his guilty plea should not have been accepted. Because Husband failed to object below, plain error review governs. See Fed. R. Crim. P. 52(b); United States v. Jarvis, 7 F.3d 404, 409-10 (4th Cir. 1993). This means, of course, that Husband must clear the high hurdle of proving that (1) there was error, (2) the error was plain, (3) the error affected substantial rights, and (4) the error "'seriously affect(s) the fairness, integrity or public reputation of judicial proceedings.'" United States v. Olano, 507 U.S. 725, 732-37 (1993); United States v. Martinez, 277 F.3d 517, 524 (4th Cir. 2002).

9

It has long been the law in this circuit that a valid guilty plea waives all non-jurisdictional defenses. See, e.g., United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993) (voluntary guilty plea waives all nonjurisdictional defects); Bloombaum v. United States, 211 F.2d 944, 945 (4th Cir. 1954) (same). Applying this rule here, we find that Husband's plea waives his statute of limitations argument, which is, of course, a non-jurisdictional affirmative defense. See, e.g., United States v. Matzkin, 14 F.3d 1014, 1017-18 (4th Cir. 1994) (statute of limitations is not a jurisdictional defense and can be waived; counsel's failure to seek statute of limitations jury instruction was not plain error even though it was "not an intentional relinquishment of a known right; but was a failure to make the timely assertion of that right"); United States v. Williams, 684 F.2d 296, 299 (4th Cir. 1982), cert. denied, 459 U.S. 1110 (1983) (18 U.S.C. § 3282 is not jurisdictional, but affirmative defense that may be waived).

While this is surely enough to end the inquiry, because the statute of limitations issue becomes relevant to subsequent arguments, we note that Husband's statute of limitations claim is meritless for a number of reasons, not the least of which is that the final element of his crime was not complete until 2001, when the tape was transported across state lines.[3] The statute of

_____

[3]The grand jury indictment implied that the "jurisdictional element" relied upon in this case was the third prong of § 2251 – that the tape was transported from New York to Virginia at some

10

limitations does not begin until all the elements necessary for the crime are completed.  See, e.g., United States v. Crossley, 224 F.3d 847, 859 (6th Cir. 2000) (statute of limitations begins to run only when all elements of crime have occurred); United States v. United Med. and Surgical Supply Corp., 989 F.2d 1390, 1398 (4th Cir. 1993) (securities or mail fraud is not complete until sale of security or use of the mail).  Thus, the clock did not begin running until 2001, when the tape was transported across state lines, not 1995, when actions that were filmed took place.  See United States v. Sirois, 87 F.3d 34, 39 (2d Cir. 1996).  As such, the case was unquestionably within any applicable statute of limitations.

B.

Husband also argues that his guilty plea was involuntary because the district court failed to advise him of the true penalty he faced as a result of his guilty plea.  As noted above, the trial judge, apparently relying on a more current version of the Sentencing Guidelines, told Husband at the plea hearing that he was subject to 10 to 20 years of prison for each count (and then,

unnamed time.  At the plea hearing, the government also noted that the tape showed conduct from New York and was found in Virginia. Thus, the government contends that the crime was inchoate until 2001.  Husband's counsel apparently agreed: at the sentencing hearing, Husband's counsel admitted that, "It was, in fact, his taking it across state lines that made it a federal case."  J.A. 115.

11

Husband contends, for <u>all</u> counts).  The PSR, however, subsequently recommended – and Husband was evidently ultimately sentenced under – the 1995 Sentencing Guidelines, which mandated a maximum 10-year sentence per count.[4]  The real issue here, though, is that the court sentenced Husband to <u>consecutive</u> terms.  Husband argues that he was given more punishment than he was warned of, and that, as a result, his plea was unknowing and involuntary.

Trial courts conducting plea colloquies are given deference. <u>United States v. DeFusco</u>, 949 F.2d 114, 116 (4th Cir. 1991), <u>cert. denied</u>, 503 U.S. 997 (1992) ("this Court should accord deference to the trial court's decision as to how best to conduct the mandated colloquy with the defendant").  Consequently, "any Rule 11 violations should be evaluated under a harmless error standard." <u>Id.</u> at 117.  <u>See also</u> Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.").

---

[4]The PSR mistakenly relied upon the idea that the crimes were completed in 1995, and thus that the 1995 Sentencing Guidelines were in effect.  This was error because, as we explained in Part II.A, <u>supra</u>, the crime was inchoate until 2001, when the videotape crossed state lines.  Section 1B1.11 of the Guidelines requires courts to use the "Guidelines Manual in effect on the date that the defendant is sentenced[,]" unless doing so would violate the ex post facto clause.  Because Husband was Sentenced on July 15, 2003, and because the 2002 Guidelines were identical to those in effect in 2001 for purposes of Husband's crime, the 2002 Sentencing Guidelines should have been used.  However, since Husband was sentenced under a Guidelines scheme counseling the 1995 statutory maximum of 10 years per count rather than the 2001 statutory maximum 20, the error <u>was in Husband's favor</u>, and thus harmless.

12

In accepting a guilty plea, the court must simply determine "whether the defendant's knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty." United States v. Goins, 51 F.3d 400, 402 (4th Cir. 1995). In determining whether a defendant's plea is acceptable, the court should focus on "three main elements":

> The court must first ascertain what the defendant actually knows when he pleads guilty on the basis of an affirmative indication in the record. Second, the court must decide what information would have been added to the defendant's knowledge by compliance with Rule 11. Finally, the court must determine how the additional or corrected information would have likely affected the defendant's decision.

Id. (citing United Stats v. Padilla, 23 F.3d 1220, 1222 (7th Cir. 1994) and United States v. Johnson, 1 F.3d 296, 302 (5th Cir. 1993)).

We have reviewed the transcript of the plea hearing with care (but also with the requisite deference), and find that the judge adequately complied with Fed. R. Crim. P. 11. Likewise, we hold that Husband knew or surely should have known that a sentence under the Guidelines could include an upward departure. Thus, it follows that no information would have been added to the defendant's knowledge, and Husband's "knowledge and comprehension of the full and correct information would not have been likely to affect his willingness to plead guilty." Goins at 402.

13

Husband relies upon the following exchange from the plea hearing as evidence that his plea violated Rule 11 and was not knowing and voluntary:

> THE COURT: In other words, without a background presentence report, Mr. Husband, the only promise that I can make to you today is that your sentence on counts one through eight would be somewhere between a minimum of ten years and a maximum of 20; do you understand?
> THE DEFENDANT: Yes, ma'am.

J.A. 47. Husband clings to this single statement with a vise-like grip, and extrapolates from it – particularly, the singular use of the word "sentence" – that the judge "promised" no more than 20 years in prison <u>in total</u>.[5]

Appellant's assertion that he did not know he might be sentenced to more than twenty years might have more merit if this was the only instance of the court discussing his potential punishment. But, of course, it is not the only instance. The judge stated, "And the maximum possible penalty <u>on each of these counts</u>, then, Mr. Husband, is a maximum of 20 years imprisonment and a minimum of ten years. Do you understand that penalty?" J.A. 35 (emphasis added). Husband replied affirmatively. The judge also noted that Husband would be subject to supervised release,

---

[5]Husband also puts forth the odd argument that his plea was not knowing and voluntary because he was unaware of his appellate counsel's statute of limitations argument. Since we disposed of the statute of limitations issue in Part I.A., <u>supra</u>, we will expend no more effort on it here. Suffice it to say that a criminal defendant thinking of relying on his ignorance of a meritless affirmative defense to overcome an otherwise knowing guilty plea may wish to consider other arguments.

"not more than three years on each count."  J.A. 42 (emphasis added).  Finally, the court also informed him prior to his guilty plea that, "in relation to any sentence that the court will impose, the United States sentencing guidelines are in effect," J.A. 35-36, and that, "ultimately under the law, it is up to the court to sentence you under the federal sentencing guidelines[.]"  J.A. 46.  See also J.A. 48.  Husband assented to these statements, stated that he had discussed the Guidelines with his attorney, and also acknowledged at least twice more the court's assurance that, under the Guidelines he would be sentenced based on the totality of his criminal conduct:  not only on "the crimes to which you are pleading guilty, but all of your relevant criminal conduct in regard to the crimes to which you are pleading guilty[.]"  J.A. 36.

Further, in attempting to decipher "what the defendant actually knows when he pleads guilty on the basis of an affirmative indication in the record," Goins, 51 F.3d at 402, one cannot ignore the fact that Husband was represented by a lawyer.  Husband admits to discussing the Guidelines with his lawyer (who, of course, should have explained the Guidelines and indicated the possibility of upward departure).  Thus, any reasonable reading of the transcript indicates that Husband knew or should have known that the equivalent of consecutive sentences was possible through upward departure.

15

Finally, however, had Husband been unsure of how his sentence would be calculated – stated otherwise, had he lied to the district court when he acknowledged that he understood that the Guidelines governed and that he had discussed how they worked with his lawyer – we have no reason to believe that he would not have pled guilty.[6] Given the overwhelming nature of the government's proffered evidence (including actual videotaping of the sexual exploitation), Husband had no shortage of good reasons for not going to trial. For example, he apparently got the government to drop counts 18, 19, and 20 by pleading guilty. Additionally, while we only review a cold record, Husband expresses regret for the humiliation his actions caused his family. It is highly likely that, in a case with facts this uncontested, horrible, and hurtful, he did not want the public shame of a trial. Indeed, perhaps he wished not to force his family to endure yet another wrenching experience. In short, Husband must have (or at the very least should have) known that the court could upwardly depart, and even if he had not known, it remains entirely unclear that this knowledge would have been "likely to affect his willingness to plead guilty." Goins, 51 F.3d at 402.

---

[6]Indeed, if his understanding of the sentence was truly unclear (which seems to be the best he could hope for upon a full and fair reading of the record), Husband said nothing and still pled, it seems to lead to the conclusion that his sentence was not really a primary consideration in his decision of whether to plead guilty; that is, other things were driving him.

Appellant also contends that the court failed to find sufficient evidence for his plea. "Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). "The court need not satisfy itself that a jury would find the defendant guilty, or even that defendant is guilty by a preponderance of the evidence." United States v. Carr, 271 F.3d 172, 179 n.6 (4th Cir. 2001). Rather, the district court "need only be subjectively satisfied that there is a sufficient factual basis for a conclusion that the defendant committed all of the elements of the offense. The district court possesses wide discretion in determining whether a sufficient factual basis exists." United States v. Mitchell, 104 F.3d 649, 652 (4th Cir. 1997). The standard of review for such claims is abuse of discretion. Carr, 271 F.3d at 179.

The district court decidedly did not abuse its discretion. The judge read all eight counts, and later asked Husband whether he wished that the judge review the eight counts again before asking for Husband's plea. Husband did not want to review the counts and pled guilty. Before accepting Husband's plea, the government proffered its evidence, the judge asked Husband whether he agreed with the proffer, and Husband and his counsel both agreed. The government's proffered evidence of guilt was overwhelming. Each element was listed in the indictments and reasonably reviewed to

the judge's subjective satisfaction in the guilty plea hearing. Thus, the court established a sufficient basis for the plea.

D.

Husband also appeals his punishment of eight consecutive 87-month sentences followed by eight consecutive three-year terms of supervised release. Husband's contention is that the combined offense level for the eight similar counts was properly grouped in the PSR. As such, since the 1995 Guideline-based range of 70-87 months per count fell below the (incorrect) statutory maximum of ten years, the extent of any consecutive sentence could only rise to the level of the (alleged) maximum.

The government, in response, rightly admits that the court could not have run the sentences consecutively in this case absent a departure, but argues that the consecutive sentences are appropriate because the district court properly upwardly departed from the Guidelines. Because he failed to object to the sentencing below, this issue too is reviewed for plain error. United States v. Jarvis, 7 F.3d 404, 409-10 (4th Cir. 1993).

First, as noted above and explained in footnote 4, supra, the court erred by using the 1995, rather than the 2002, Sentencing Guidelines. But this error was clearly in Husband's favor: his sentence was half of what he could have received under the 2002

18

Guidelines.  More fundamentally, however, the court did not, as it should have, clearly grant the motion for upward departure.[7]

Even granting that the district court erred by not officially granting the motion for upward departure, this error does not harm Husband because, if we were to remand, the court undoubtedly would grant an upward departure and sentence Husband to precisely the same 696-month sentence that he has now if we remanded the matter to the court.  Specifically, the court explains,

> If for some reason the appellate court is not in agreement with me, then my alternative ruling is that I would upwardly depart on these matters.  In other words, I would not be in the guideline range here.  I would upwardly depart and do an appropriate sentence with an

---

[7]The record states that, at the sentencing hearing on 7/15/2003, "Court granted gov's motion for upward departure." J.A. 6.  The transcript of the hearing, however, complicates things.  Essentially, it seems that the court started to rule on the motion, discussed the grounds for upward departure, and indicated its general, strong, and wide-based support for the motion ("I have reviewed those cases, verified their validity, and they support the government's proposition," J.A. 121) and general disapproval of Husband's opposition brief ("The defendant counters that the past conduct is accounted for by the guideline calculations, but I don't agree. . .").  Id.  The court then further submits the reasons why the government's position was correct on several different grounds.  Things are continually confused, however, by the judge's consistent use of conditional verbs, e.g., "I would find that certainly an upward departure would be warranted. . ."; "Likewise I would find that a departure would be warranted because of the repetitive nature of the conduct."; "So basically I would find that there are all of these grounds to depart upward.".  J.A. 123-24 (emphasis added).  Ultimately, and particularly when considering the court's Statement of Reasons, it appears clear enough to us that the district court errantly believed that it could sentence Husband to consecutive terms absent an upward departure, and thus that it did not actually grant the government's motion at the sentencing hearing.

19

upward departure that would meet the goals of this particular case.

J.A. 125-26. As noted above, the statutory maximum for the crime is 10 years per count even if the court uses the PSR's recommendation (which, as the district court ultimately recognized, is a mistake, given that the proper standard is a 20 year maximum, but one we will not here correct because it favors Husband). Thus, even granting that there was an error, and that it may have been "plain," the error certainly does not affect Husband's substantial rights, for he would justifiably receive precisely the same sentence. See Olano, 507 U.S. at 732-37.

E.

Finally, Husband claims that his counsel was ineffective because he failed to raise the statute of limitations defense. Claims of ineffective assistance may not be raised on direct appeal unless the record demonstrates ineffectiveness conclusively. United States v. Richardson, 195 F.3d 192, 198 (4th Cir. 1999); United States v. King, 119 F.3d 290, 295 (4th Cir. 1997); United States v. Hoyle, 33 F.3d 415, 418 (4th Cir. 1994). Ineffective assistance of counsel claims must meet the two-step test of Strickland v. Washington, 466 U.S. 668, 687 (1984): (1) counsel's performance is objectively deficient, and (2) the deficient performance prejudices the defendant. Because, as explained in Part II.A, supra, the statute of limitations argument is meritless,

20

failure to make it cannot be deficient at all, much less "objectively" so.  Likewise, Husband is in no way prejudiced by his counsel's conduct.

III

For all the reasons as stated above, on all issues raised by Appellant, the district court is

AFFIRMED.