PUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 99-4567

PAUL ANDREW STOKES, JR.,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 99-4576

ROBERT LARRY JEFFREY, JR.,
Defendant-Appellant.

Appeals from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Henry C. Morgan, Jr., District Judge.
(CR-98-145)

Argued: November 3, 2000

Decided: August 17, 2001

Before NIEMEYER and KING, Circuit Judges, and
Margaret B. SEYMOUR, United States District Judge for
the District of South Carolina, sitting by designation.

_____

Affirmed by published opinion. Judge King wrote the opinion, in
which Judge Niemeyer and Judge Seymour concurred.

_____

**COUNSEL**

**ARGUED:** Keith Loren Kimball, COLGAN & KIMBALL, P.L.C., Virginia Beach, Virginia, for Appellant Jeffrey; Robert Bryan Rigney, PROTOGYROU & RIGNEY, P.L.C., Norfolk, Virginia, for Appellant Stokes. Janet S. Reincke, Assistant United States Attorney, Norfolk, Virginia, for Appellee. **ON BRIEF:** Helen F. Fahey, United States Attorney, Billy B. Ruhling, II, Third Year Law Student, Norfolk, Virginia, for Appellee.

_____

**OPINION**

KING, Circuit Judge:

Robert Larry Jeffrey, Jr., and Paul Andrew Stokes, Jr., appeal their convictions and sentences on multiple drug-related offenses. Jeffrey and Stokes were each convicted of one count of conspiracy to possess with intent to distribute and to distribute 5 kilograms or more of a mixture containing cocaine ("cocaine") and 50 grams or more of a mixture containing cocaine base ("crack"), in violation of 21 U.S.C. § 846. Additionally, Jeffrey was convicted of six counts of distributing 50 grams or more of crack, one count of distributing 500 grams or more of cocaine, and one count of distributing a detectable amount of cocaine. Stokes was also convicted of four counts of distributing 50 grams or more of crack, one count of distributing 5 grams or more of crack, and two counts of possessing with intent to distribute 50 grams or more of crack. The substantive trafficking counts all constituted violations of 21 U.S.C. § 841. Jeffrey and Stokes raise numerous issues on appeal. For the reasons that follow, we affirm the convictions and the sentences imposed by the district court.

I.

Jeffrey and Stokes were part of a network of drug distributors who, between 1991 and 1997, dealt in cocaine and crack in Portsmouth, Virginia. A grand jury in the Eastern District of Virginia returned a twenty-two-count superseding indictment against Jeffrey and Stokes on January 11, 1999, a month after proceedings on similar charges

2

against them ended in a mistrial. The superseding indictment charges specific threshold drug quantities for each count; for example, Count Seven, against Jeffrey, alleges that he distributed "50 grams or more of a mixture and substance containing a detectable amount of cocaine base, commonly known as `crack[.]'" J.A. 33.

On March 24, 1999, at the close of a seven-day jury trial, Jeffrey was convicted on nine counts and Stokes on eight counts. At sentencing, the district court determined, by a preponderance of the evidence, that Jeffrey and Stokes were each responsible for more than 1.5 kilograms of crack. The resulting range for each defendant, under the U.S. Sentencing Guidelines Manual (the "Guidelines" or "U.S.S.G."), was 292 to 365 months' imprisonment. On August 4, 1999, the court sentenced Jeffrey to prison terms of 292 months on each of eight counts and 240 months on one count, all to run concurrently. The court sentenced Stokes to 292 months' imprisonment on each of eight counts, each term to also run concurrently.[1] They have appealed their convictions and sentences, and we possess jurisdiction over their appeals pursuant to 28 U.S.C. § 1291.

II.

First, Jeffrey and Stokes maintain that their convictions and prison sentences violate the rule established in Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) (holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt").

A.

At trial, the jury was instructed that specific threshold drug quantities were charged in the indictment for each count. However, the district court also delivered an instruction (the "quantity instruction") that permitted the jury to find Jeffrey and Stokes guilty with proof of merely any "measurable amount" of the relevant substance.[2] The

_____

[1] The court also imposed terms of supervised release and financial penalties against Jeffrey and Stokes on each count.
[2] The quantity instruction presented to the jury provides:

   The evidence received as to each count in this case need not

3

quantity instruction was included at the Government's request and over the objections of trial counsel. In objecting, one of the defense attorneys explained:

> So I think if the [G]overnment chooses to indict that way and put specific quantities in, that they cannot then have a jury instruction to come behind that in an attempt to show or tell the ladies and gentlemen of the jury that, you know, those amounts really don't mean anything. If they didn't mean anything, they [the Government] shouldn't have indicted that.

J.A. 1073. The district court, however, agreed with the Government and gave the quantity instruction because, at the time, drug quantity was considered a sentencing issue that did not require jury determination. See, e.g., United States v. Powell, 886 F.2d 81, 85 (4th Cir. 1989) ("[B]ecause the quantity of the drug went to the question of Powell's sentence, rather than his guilt, the government only had to prove that quantity by a preponderance of the evidence."). Though the jury indeed may have found sufficient proof of the charged drug quantities, it is impossible to make this determination from the face of the jury's general verdict.

Subsequent to Jeffrey and Stokes's 1999 jury trial, and while this appeal was pending, the Supreme Court rendered its Apprendi decision. Though Apprendi involved a New Jersey hate crimes statute, we recently concluded that its rule applies with regard to sentencing under 21 U.S.C. § 841. See United States v. Promise, 255 F.3d 150

_____

> prove the actual amount of the controlled substance that was part of the alleged transaction or the exact amount of the controlled substance alleged in the indictment to have been possessed with intent to distribute or to have been distributed by the defendant under consideration.
>
> The government must prove beyond a reasonable doubt, however, that a measurable amount of a controlled substance was, in fact, knowingly and intentionally possessed with the intent to distribute or distributed by the defendant under consideration.

Tr. of Jury Charge, at 16-17.

4

(4th Cir. 2001) (en banc).**3** That is, where -- as here -- the offenses involved cocaine and crack, but death or bodily injury did not result from their use and the defendant had no prior felony drug convictions, the defendant might be sentenced under:

> (1) § 841(b)(1)(A) (providing a sentence of ten years to life in prison for offenses involving at least 5 kilograms of cocaine or 50 grams of crack); or

> (2) § 841(b)(1)(B) (five to forty years' imprisonment for at least 500 grams of cocaine or 5 grams of crack); or

> (3) § 841(b)(1)(C) (up to twenty years' imprisonment for any identifiable amount of cocaine or crack).**4**

Under Promise, in order to sentence the defendant pursuant to § 841(b)(1)(A) or (B), "the specific threshold quantity must be treated as an element of an aggravated drug trafficking offense, i.e., charged in the indictment and proved to the jury beyond a reasonable doubt." Promise, 255 F.3d at 156-157. Otherwise, the defendant must be sentenced under the third alternative, the default provision of the statute contained in § 841(b)(1)(C). See id. at 157 n.7.

Jeffrey and Stokes were each sentenced under § 841(b)(1)(A) and (B) on eight counts, even though the jury did not find the threshold drug quantities that would justify invoking these subsections.**5** That is, we can discern from its verdict only that the jury found that the offenses involved "a measurable amount" of either cocaine or crack

_____

**3** Soon after oral argument in this case, we granted rehearing en banc in Promise and a companion case, United States v. Angle, 254 F.3d 514 (4th Cir. 2001) (en banc). Thus, neither the appellants nor the Government had the benefit of our decisions in Promise and Angle in preparing their briefs and oral argument.
**4** Section 841(b)(1) provides penalties not only for violations of § 841, but also for transgressions of § 846 that involve a conspiracy to commit an offense defined in § 841. Therefore, each of the crimes at issue in this case is punishable under § 841(b)(1).
**5** Jeffrey was properly sentenced under § 841(b)(1)(C), to the maximum prison term of 240 months, on the remaining count.

-- crimes punishable, with a twenty-year maximum, solely under § 841(b)(1)(C). The district court, however, imposed concurrent prison terms of 292 months on each of these counts-- fifty-two months more than authorized by § 841(b)(1)(C). As we concluded in Promise, such sentencing constituted error under Apprendi. See Promise, 255 F.3d at 159.

B.

Because Jeffrey and Stokes timely objected at trial to the quantity instruction, they are, unless we determine that the Apprendi error was harmless, entitled to some appellate relief. See Fed. R. Crim. P. 52(a) ("Any error . . . which does not affect substantial rights shall be disregarded."). In undertaking harmless error review, we impose the burden on the Government to show, beyond a reasonable doubt, that the error did not affect Jeffrey's and Stokes's substantial rights or, in other words, that it did not prejudice them. See United States v. Hastings, 134 F.3d 235, 240-41 (4th Cir. 1998)."Prejudice," in this context, means that the error "actually affected the outcome of the proceedings[,]" id. at 240, i.e., the defendants' sentences were "longer than that to which [they] would otherwise be subject[,]" United States v. Angle, 254 F.3d 514 (4th Cir. 2001) (en banc). See also United States v. Stewart, ___ F.3d ___, No. 98-4155(L), 2001 WL 760262, at *16-17 (4th Cir. July 6, 2001).[6]

_____

[6] It is noteworthy that Jeffrey and Stokes are represented by different court-appointed lawyers on appeal than those who defended them at trial, and that their appellate counsel inaccurately maintained before us that their predecessors at trial had failed to object to the quantity instruction. See supra Part II.A. This oversight by appellate counsel was perpetuated by the Assistant United States Attorney -- who represented the Government both at trial and on appeal -- who also claimed no objection was made and who herself had urged the district court to give the quantity instruction.

Absent our discovery of the objection made by trial counsel, the Apprendi errors would have been subject to review only for plain error, and the burden would have been on Jeffrey and Stokes to prove prejudice, rather than on the Government to establish that there were none. See Promise, 255 F.3d at 160; United States v. Strickland, 245 F.3d 368, 379-80 (4th Cir. 2001) (explaining the distinctions between harmless and

6

The Government maintains that Jeffrey and Stokes were not prejudiced, because the evidence of drug quantity was uncontested and overwhelming. See, e.g., United States v. Montgomery, ___ F.3d ___, No. 98-4688(L), 2001 WL 810346, at *14 (4th Cir. July 17, 2001) (citing Stewart for the principle that "if drug quantity was charged in the indictment . . . then failure to submit drug quantity to the jury does not affect a defendant's substantial rights if the trial produced `uncontested and overwhelming evidence' of drug quantity sufficient to sustain the sentence."). We need not pursue this line of inquiry, however, because it is clear, pursuant to our analysis along a different line in Angle, that Jeffrey and Stokes would have received the same sentences regardless of the Apprendi error.

In Angle, James Edward Phifer (Corey Angle's co-defendant) was convicted on one count of conspiracy to possess with intent to distribute and to distribute cocaine and crack, in violation of 21 U.S.C. § 846, and on two counts of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). See Angle, 254 F.3d at 516. The indictment did not allege, nor did the jury find, a specific drug quantity in connection with the conspiracy charge. See id. at 517. Phifer was exposed, on these three counts, to a total statutory maximum term of sixty years' imprisonment. See id. at 518. Phifer received a sentence of 292 months' imprisonment for conspiracy and two sentences of 240 months' imprisonment for money laundering, all to run concurrently. See id. at 516. Thus, on the conspiracy count, Phifer was erroneously sentenced to fifty-two months more than the maximum prison term authorized under 21 U.S.C. § 841(b)(1)(C). See supra Part II.A.

We concluded, however, that Phifer suffered no prejudice, because he was subject to the same prison term by way of consecutive, rather than concurrent, sentences on the multiple counts. See Angle, 254 F.3d at 518. That is, the district court ascertained at sentencing that Phifer was responsible for at least 29 kilograms of cocaine and 3 kilo-

_____

plain error review). The application of harmless (rather than plain) error review certainly could be outcome-decisive in a given case. For reasons explained infra, however, Jeffrey and Stokes are not entitled to appellate relief even under the more defendant-favorable strictures of the harmless error test.

7

grams of crack. <u>See id.</u> at 516. Under the Guidelines, the resulting range was 292-365 months' imprisonment. <u>See id.</u> at 516. Though the conspiracy count alone carried a statutory maximum of 240 months' imprisonment,

> [i]n the case of multiple counts of conviction, the sentencing guidelines instruct that if the total punishment mandated by the guidelines exceeds the statutory maximum of the most serious offense of conviction, the district court must impose consecutive terms of imprisonment to the extent necessary to achieve the total punishment.

<u>Id.</u> at 518 (citing U.S.S.G. § 5G1.2(d)). Consequently, we determined that Phifer was not prejudiced by the imposition of a 292-month sentence on the conspiracy count, because the district court nonetheless would have been obligated, under U.S.S.G. § 5G1.2(d), to achieve the guideline sentence of 292 months via consecutive sentences. <u>See id.</u> at 518.

Similarly, the Guidelines range for both Jeffrey and Stokes, based on the district court's determination at sentencing that they were responsible for more than 1.5 kilograms of crack, was 292 to 365 months' imprisonment. Jeffrey and Stokes were exposed to far greater statutory maximum terms -- Jeffrey to a total of 180 years on nine counts, and Stokes to 160 years on eight counts. Even if the district court had not strayed beyond the statutory maximum term of twenty years' imprisonment on each count, the court still would have been mandated, under the provisions of U.S.S.G. § 5G1.2(d), to impose consecutive sentences in order to attain prison terms within the prescribed Guidelines range. Therefore, we conclude that Jeffrey's and Stokes's substantial rights were not affected by the <u>Apprendi</u> error.**7**

_____

**7** We also recognized in <u>Angle</u> that a defendant, in circumstances like Phifer's, might be able to "demonstrate that a refusal to vacate his sentence and order resentencing could in some way affect his substantial rights"; if so, "that would present a different case." 254 F.3d at 518 n.2. We cannot, however, discern any ground for distinguishing this case from <u>Angle</u>, other than recognizing that our review in this case is for harmless error, while in <u>Angle</u> it was for plain error. <u>See supra</u> note 6. Even with the burden on the Government to prove that Jeffrey and

8

III.

Next, Jeffrey and Stokes contend that they were denied a fair trial because the Government withheld exculpatory evidence from them in contravention of the rule announced in Brady v. Maryland, 373 U.S. 83, 87 (1963) (holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution").

A.

The evidence at this trial consisted of the testimony of seventeen witnesses, including Jason Davis, who, like other indicted and unindicted co-conspirators of Jeffrey and Stokes, had entered into a plea agreement and consented to testify on behalf of the Government. Davis's testimony provided a basis for the convictions of Jeffrey on three counts, Stokes on one count, and both defendants on the conspiracy charge. According to Davis, he purchased drugs from Jeffrey and Stokes with the help of an intermediary he knew only as "Peanut"; "Peanut" was never further identified at trial.

On August 4, 1999, following their convictions, Jeffrey and Stokes each filed a motion for a new trial on the ground that the Government had, in violation of Brady, failed to provide them with notes from a Government agent's January 1999 interview with Joseph Brown, Jr.,

_____

Stokes would have received the same prison terms despite the Apprendi violation, it is clear that they were not prejudiced. That is, nothing in the record suggests that the district court would not impose the same 292-month sentences on Jeffrey and Stokes, albeit by way of consecutive sentences, upon resentencing them. For example, in a similar case, there might be some suggestion that a court would depart from the prescribed Guidelines range rather than impose consecutive sentences. See, e.g., United States v. Johnson, 138 F.3d 115, 119 n.6 (4th Cir. 1998). There is no such indication here. Jeffrey and Stokes did not request a departure from the Guidelines, their presentence reports suggested no basis to depart, and the district court expressed no inclination to deviate from the applicable range.

9

a/k/a "Peanut." In seeking to identify the"Peanut" implicated by Davis, Government agents had searched for men in the Portsmouth area bearing that nickname, focusing on Brown as a likely match with Davis's "Peanut." During his interview with an agent, Brown stated that he was familiar with Jeffrey and Stokes, but he denied acting as an intermediary between them and Davis. When shown a"picture book" that included Jeffrey and Stokes, Brown failed to pick out the defendants' photographs.

The district court denied Jeffrey's and Stokes's motions for a new trial. We review the court's decisions on these motions for an abuse of discretion. See United States v. Huggins, 191 F.3d 532, 536 (4th Cir. 1999).

B.

In order to prove that the Government's failure to tender the inter- view notes constituted a Brady violation, the burden rests on Jeffrey and Stokes to "show that the undisclosed evidence was (1) favorable to the defendant[s]; (2) material; and (3) that the prosecution had the materials and failed to disclose them." United States v. Sarihifard, 155 F.3d 301, 309 (4th Cir. 1998) (citing Moore v. Illinois, 408 U.S. 786, 794-95 (1972); Maynard v. Dixon, 943 F.2d 407, 417 (4th Cir. 1991)). Assuming that the first and third parts of this test are satisfied, our inquiry focuses on the second: whether the notes were "material," i.e., whether "there is a reasonable probability that [their] disclosure would have produced a different outcome." Id. (citing United States v. Kelly, 35 F.3d 929, 936 (4th Cir. 1994)).

Jeffrey and Stokes maintain that the notes could have been used at trial to impeach Davis, because Brown's statements contradicted Davis's testimony that "Peanut" acted as an intermediary between Davis and the defendants. According to the defendants, if Davis's tes- timony had been discredited, there would have been no proof to sup- port Jeffrey's convictions on three substantive drug trafficking counts, as well as less evidence to bolster the convictions of Stokes on one trafficking count and of both defendants for conspiracy. Moreover, Jeffrey and Stokes insist,

> impeachment material tending to show that Mr. Davis fabri- cated much if not all of his testimony would put into ques-

10

tion not only Davis' credibility, but the Government's entire case . . . because the testimony given by the [G]overnment's witnesses appeared so scripted in its presentation and the impeachment material available to the defense [i.e., the witnesses' hopes of obtaining sentence reductions in return for cooperating with the Government] was so uniform in nature.

Appellants' Br., at 25-26.

The district court concluded, however, that the interview notes were not material to Jeffrey's and Stokes's guilt because, inter alia, Davis likely would not have been successfully impeached with the notes. As the court explained, "The court doesn't believe it would have made any difference in the credibility of the witness Jason Davis because the -- this witness Brown or Peanut would naturally deny that he was involved in drug dealings with either defendant since to do otherwise, it would have incriminated him." J.A. 1208.[8] We agree with the district court and, therefore, we conclude that the court did not abuse its discretion in denying Jeffrey and Stokes a new trial.[9]

IV.

For the foregoing reasons, we affirm the convictions and sentences of Jeffrey and Stokes.

AFFIRMED
_____

[8] Moreover, as the Government points out, Brown was never positively identified as the "Peanut" implicated by Davis. At the hearing on Jeffrey's and Stokes's motions for a new trial, they relied on an affidavit containing a hearsay statement purported to be that of Brown, denying any involvement with the defendants in drug deals; the affidavit was signed by Jeffrey's mother (who obtained the statement), not Brown. Though the defendants asked Brown to appear at the hearing, he was not subpoenaed and did not attend. Furthermore, no evidence proffered by Jeffrey and Stokes, including the affidavit, clearly demonstrated that Brown was Davis's "Peanut."

[9] As previously noted, Jeffrey and Stokes raise numerous other issues on appeal. Although, in this opinion, we fully address only the purported violations of Apprendi and Brady, we have also carefully considered Jeffrey's and Stokes's remaining assertions of error and the arguments made in support of each, and we conclude that they lack merit.

11