**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-4288**

UNITED STATES OF AMERICA,

                    Plaintiff – Appellee,

          v.

YAYAH TALIB,

                    Defendant – Appellant.

**No. 08-4353**

UNITED STATES OF AMERICA,

                    Plaintiff – Appellee,

          v.

JOSE SANTIAGO,

                    Defendant – Appellant.

Appeals from the United States District Court for the Western
District of Virginia, at Big Stone Gap.  James P. Jones, Chief
District Judge.  (2:07-cr-00003-jpj-1; 2:07-cr-00003-jpj-4)

Submitted:  September 28, 2009      Decided:  October 16, 2009

Before MOTZ and SHEDD, Circuit Judges, and HAMILTON, Senior
Circuit Judge.

Affirmed by unpublished per curiam opinion.

———————————

Michael T. Hemenway, THE LAW OFFICES OF MICHAEL T. HEMENWAY, Charlottesville, Virginia; Gregory M. Kallen, Big Stone Gap, Virginia, for Appellants.   Julia C. Dudley, United States Attorney, Jennifer R. Bockhorst, Assistant United States Attorney, Abingdon, Virginia, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This appeal arises out of a multi-member conspiracy to possess and distribute heroin in the United States Penitentiary in Lee County, Virginia ("USP-Lee"). Defendants Yayah Talib and Jose Santiago were convicted after a joint jury trial for conspiracy to distribute heroin, in violation of 21 U.S.C. §§ 841(b)(1)(C), 846 (2006), and conspiracy to provide and possess contraband in prison, in violation of 18 U.S.C. § 371 (2006). The court sentenced both Defendants to 262 months in prison. Defendants filed a consolidated appeal in which they assert, either collectively or individually, that the district court: (i) erred when it denied their motions for a new trial and for judgments of acquittal; (ii) made erroneous evidentiary holdings; and (iii) erred when it classified them as career offenders. Finding no error, we affirm.

I.  Denial of Motions for a New Trial or for Judgments of Acquittal

This court reviews de novo the denial of a Fed. R. Crim. P. 29 motion for judgment of acquittal, and reviews the denial of a Fed. R. Crim. P. 33 motion for abuse of discretion. United States v. Alerre, 430 F.3d 681, 693 (4th Cir. 2005) (Rule 29 motion); United States v. Perry, 335 F.3d 316, 320 (4th Cir. 2003) (Rule 33 motion). A district court may only grant a

3

defendant's motion for a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). A district court is required to "exercise its discretion to grant a new trial sparingly, and . . . should do so only when the evidence weighs heavily against the verdict." Perry, 335 F.3d at 320 (internal quotation marks omitted).

Talib asserts that the district court erred in denying his Rule 33 motion based on the Government's Giglio[1] violation. Specifically, Talib asserts that he was unable to discredit a co-conspirator's testimony against him because the Government failed to disclose the co-conspirator's criminal history to him prior to trial. Santiago submits a similar claim. Although Santiago acknowledges that the co-conspirator did not testify regarding Santiago's role in the conspiracy,[2] he summarily asserts on appeal that the Government's Giglio violation deprived him of a fair trial because knowledge of the co-conspirator's criminal history "may have raised a doubt in

_____

[1] Giglio v. United States, 405 U.S. 150, 153-55 (1972) (requiring the Government to disclose evidence affecting the credibility of prosecution witnesses).

[2] Although the co-conspirator testified that he knew Santiago, he offered no testimony regarding Santiago's role in the conspiracy.

4

the mind of the jury had they known the extent of [the co-conspirator's] criminal record."

It is well-established that the Due Process Clause requires the government to disclose to the defense prior to trial any exculpatory or impeaching evidence in its possession. See Giglio, 405 U.S. at 153-55; Brady v. Maryland, 373 U.S. 83, 86-88 (1963) (requiring the disclosure of exculpatory evidence). Due process is violated, however, only if the evidence in question: (i) is favorable to the defendant because it is either exculpatory or impeaching; (ii) was suppressed by the Government; and (iii) is material. See Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

Undisclosed evidence is material when its cumulative effect is such that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Kyles v. Whitley, 514 U.S. 419, 433 (1995) (internal citations and quotation marks omitted). A reasonable probability is one sufficient to "undermine confidence" in the outcome. Id. at 435 ("The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Id. at 434.).

5

Although it is undisputed that the Government was obligated to turn over the co-conspirator's criminal history prior to trial, we find that the district court did not abuse its discretion when it denied Defendants' motions because the criminal history was not material to their defenses. The jury was well aware that the co-conspirator was a convicted felon at time of Defendants' trial; both the Government and Talib questioned the co-conspirator about his felon status at the trial; the jury was aware that the co-conspirator was also charged for conspiring to bring heroin into USP-Lee; and upon cross-examination by Talib, the co-conspirator testified that he had a prior felony conviction for aiding and abetting a bank robbery.

Moreover, because the co-conspirator's testimony merely confirmed another witness's testimony about Talib's role in the conspiracy, and since there was ample evidence that Santiago and Talib engaged in a conspiracy to distribute heroin inside USP-Lee regardless of the co-conspirator's testimony, we find that the jury's guilty verdict is worthy of confidence despite the Government's Giglio violation.

Talib also asserts that he was denied a fair trial when the district court denied his Rule 29 motion. Talib argues that because the drug evidence against him was destroyed prior to trial, and because the Government failed to disclose the

destruction until just prior to trial, the Government prevented Talib from opposing the physical evidence against him. We find that the district court did not err when it denied Talib's Rule 29 motion.

To establish that the Government violated its Brady obligations when it failed to inform Talib about the evidence destruction, Talib was required to establish that the Government was aware that the evidence was destroyed. See United States v. Stokes, 261 F.3d 496, 502 (4th Cir. 2001) (noting that to prove a Brady violation, the defendant must show that "the prosecution had the materials and failed to disclose them") (internal quotation mark omitted). The evidence at trial established, however, that the local police department that maintained physical custody of the heroin mistakenly believed that the federal cases had concluded, and that the police did not inform federal authorities that the evidence had been destroyed until just before Defendants' trial. It was also established that as soon as the Government confirmed that the evidence was destroyed, the Government faxed a letter to Santiago's counsel and Talib's stand-by counsel[3] and, because Talib was housed in

---

[3] Although Talib was initially represented by counsel, the district court granted Talib's pro se motion for removal of counsel and allowed Talib to proceed pro se. The district court nonetheless ordered stand-by counsel to assist Talib in his defense.

the special housing unit at USP-Lee, the Government requested that counsel inform Talib of the situation when they met with him at the prison later that day. Talib does not assert that he was not informed as to the destruction of the heroin promptly after the Government provided such notice to his stand-by counsel.

Moreover, Talib cannot establish that the evidence was material. Although Talib asserts that the Government's late notification about the destruction deprived him of an opportunity to conduct his own testing, more than eight months passed between the time he was indicted and his jury trial and no request for access to the physical evidence was ever made. Nor does Talib explain why he believes that the lab analysis results should be questioned.

In any event, the Government's failure to ensure preservation of the physical evidence in this case does not automatically constitute a due process violation. Rather, when law enforcement officers fail "to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant," a defendant must show bad faith on the part of law enforcement officers to establish a denial of constitutional due process. <u>Arizona v. Youngblood</u>, 488 U.S. 51, 57 (1988).

Talib failed to show that the evidence was destroyed in bad faith. To the contrary, trial testimony established that the state officer who ordered the evidence to be destroyed believed that the case was concluded and the officer never contacted federal authorities to determine if the evidence was still needed. In the absence of bad faith on the part of law enforcement, the destruction of the physical evidence did not amount to a violation of Talib's due process rights and, accordingly, Talib was not entitled to a judgment of acquittal because of the destruction.[4]

Defendants both assert that the charges against them were multiplicitous and, thus, that their convictions on both counts violated the Double Jeopardy Clause. While it is true that an indictment charging a single offense in several different counts is multiplicitous and subjects a defendant to a risk of multiple sentences for a single offense in violation of the Double Jeopardy Clause, see United States v. Goodine, 400 F.3d 202, 207 (4th Cir. 2005), a defendant may be convicted

---

[4] Although Santiago also asserts on appeal that the evidence should not have been admitted because "bad faith is implicit in the destruction of evidence where the police know that there were charges pending and did not have good cause to destroy the evidence," Santiago cites no authority for these propositions. Moreover, we find his assertion that police were aware of the pending status of the federal charges to be belied by the record.

9

of separate offenses arising from a single act if each charge requires proof of a fact that the other does not. See Blockburger v. United States, 284 U.S. 299, 304 (1932); Manokey v. Waters, 390 F.3d 767, 771-73 (4th Cir. 2004).

We find that Defendants' convictions for conspiracy to distribute heroin, in violation of 21 U.S.C. §§ 841(b)(1)(C), 846, and conspiracy to defraud the United States or commit any offense against the United States (i.e., provide and possess contraband in prison), in violation of 18 U.S.C. § 371, although both stemming from the same events, were not the same offense for double jeopardy purposes. See Albernaz v. United States, 450 U.S. 333, 344 n.3 (1981) (recognizing that a single conspiracy "can give rise to distinct offenses under separate statutes without violating the Double Jeopardy Clause"); see also United States v. Holloway, 128 F.3d 1254, 1257-58 (8th Cir. 1997) (holding that convictions under §§ 846 and 371 do not offend the Double Jeopardy Clause). Accordingly, we conclude that the district court did not err in denying Defendants' Rule 29 and Rule 33 motions based on multiplicity or double jeopardy grounds.

II. Limitation of Talib's Character Witnesses

Talib also asserts that the district court erred when it limited his character witnesses at trial to two out of the

five witnesses he sought to present, and that the district court violated his right to a fair trial when it prevented two other witnesses from testifying by suggesting that they refuse to testify on his behalf. Although a defendant has a constitutional right to present evidence in his favor, see United States v. Moussaoui, 382 F.3d 453, 471 (4th Cir. 2004), "a defendant's right to present a defense is not absolute: criminal defendants do not have a right to present evidence that the district court, in its discretion, deems irrelevant or immaterial." United States v. Prince-Oyibo, 320 F.3d 494, 501 (4th Cir. 2003). We review a district court's decision to exclude evidence for an abuse of discretion. See United States v. Fulks, 454 F.3d 410, 434 (4th Cir. 2006).

We find that the district court did not abuse its discretion when it limited Talib to only two of the five character witnesses he wished to present. When questioned by the district court, Talib confirmed that all five witnesses -- who were all inmates at USP-Lee -- would similarly testify that Talib did not engage in criminal activity in prison. The district court also discovered that one of the inmates Talib wished to present was unavailable to testify for disciplinary reasons. Given the cumulative nature of the proposed witnesses' testimony, we hold that the district court was well within its discretion to limit Talib's character witnesses.

11

We also find that the district court did not deprive Talib of his due process rights by "intimidat[ing] two of [his] witnesses into refusing to testify." To the contrary, the record establishes that during an ex parte communication between the district court, Talib, and Talib's stand-by counsel, the district court explained to Talib that since two proposed witnesses were implicated in the conspiracy, the district court was required to warn both witnesses of their Fifth Amendment right against self-incrimination before they testified. Although the district court wanted to contact one of the witnesses by telephone to inform her of her rights, Talib explained that it was difficult to reach the witness because her telephone number was disconnected; Talib then decided to forego calling her as a witness. The record does not suggest that Talib changed his mind about having the witness testify because he was strong-armed by the district court.

The district court contacted Talib's other proposed witness by telephone and, after explaining that she was implicated in the sale of marijuana and that she had a right not to incriminate herself or to waive that right and testify on Talib's behalf, the witness informed the district court that she declined to testify. The district court thus excused her from testifying. The district court had discretion to caution this witness of the possibility of incriminating herself if she

decided to testify.  See United States v. Arthur, 949 F.2d 211, 215-16 (6th Cir. 1991) (holding that a district court has discretion to caution a witness about self-incrimination so long as the court does not "actively encourage[ the] witness not to testify or badger[] a witness into remaining silent").  Although threatening remarks and conduct that effectively drive a witness off the witness stand amount to a due process deprivation, see Webb v. Texas, 409 U.S. 95, 353-54 (1972), no such conduct occurred in this case.  Accordingly, we find that the district court's admonition did not amount to a due process violation.

III. Career Offender Classifications

Both Defendants assert that the district court erred when it overruled their respective objections to their Guidelines range calculations in their presentence investigation reports and adopted those calculations.  When reviewing a district court's application of the Sentencing Guidelines, this court reviews its findings of fact for clear error and its rulings on questions of law de novo.  United States v. Osborne, 514 F.3d 377, 387 (4th Cir. 2008), cert. denied, 128 S. Ct. 2525 (2008).

Career offender classification requires, among other conditions, that a defendant have at least two prior felony convictions for crimes of violence or controlled substance

13

offenses.  See U.S. Sentencing Guidelines Manual ("USSG")
§ 4B1.1(a) (2007).  The Guidelines define a "controlled
substance offense" as follows:

> [A]n offense under federal or state law, punishable by
> imprisonment for a term exceeding one year, that
> prohibits the manufacture, import, export,
> distribution, or dispensing of a controlled substance
> (or a counterfeit substance) or the possession of a
> controlled substance (or a counterfeit substance) with
> intent to manufacture, import, export, distribute, or
> dispense.

USSG § 4B1.2(b) (2007).  A crime of violence is an offense
punishable by a term of imprisonment greater than one year that
"has as an element the use, attempted use, or threatened use of
physical force against the person of another."  USSG § 4B1.2(a)
(2007).  We find that both Defendants were properly classified
as career offenders.

The prior felony convictions that rendered Talib a
career offender were as follows:  (i) a 1989 conviction for
burglary, for which he was not released from prison until March
1992, when his parole revocation sentence ended; (ii) a 1997
conviction for unlawful delivery of a non-controlled substance;
and (iii) a 2000 carjacking conviction.[5]  It is undisputed that
Talib's carjacking conviction was a proper career offender

---

[5] Although Talib's 2000 escape conviction was also
considered to be a proper predicate offense, because Talib has
three other qualifying convictions, whether the escape
conviction also qualifies is immaterial.

14

predicate offense. Talib nonetheless asserts that his 1989 burglary conviction was not a proper predicate offense because his last parole for that conviction was revoked in 1990, sixteen years before the conspiracy for which he was found guilty.

This argument is meritless. Under USSG § 4A1.2(e)(1) (2007), any sentence of imprisonment exceeding one year and one month that results in the defendant being incarcerated for a period of time within fifteen years of the commencement of the instant offense may be properly considered in designating a defendant a career offender. See USSG § 4A1.2(e)(1); USSG § 4B1.2 cmt. n.3 (stating that § 4A1.2 applies to the counting of convictions under § 4B1.1). In calculating the fifteen-year time period, the Guidelines direct the use of the date of a defendant's last release following parole revocation. USSG § 4A1.2(k)(2)(B)(i). Because Talib was not released following his parole revocation until March 1992, the time period for which the 1989 conviction could qualify as a career offender predicate offense did not expire until March 2007, well after the August 2006 conspiracy. Accordingly, we find that the district court properly classified Talib as a career offender.[6]

---

[6] Although Talib also argues that his 1997 conviction for unlawful delivery of a non-controlled substance did not qualify as a proper predicate offense because the substance he delivered was counterfeit, this argument is explicitly foreclosed by the Guidelines, as they specifically define a "controlled substance
(Continued)

Santiago's career offender predicate offenses consisted of the following: (i) a 1991 conviction for third degree criminal sale of a controlled substance, for which he was released from prison in 1994 after his sentence for parole revocation ended; (ii) a 1991 conviction for third degree criminal sale of a controlled substance, for which he was released from prison in 1994 after his sentence for parole revocation ended; and (iii) a 2002 narcotics distribution conviction.[7] It is undisputed that Santiago's 2002 conviction was a proper predicate offense. Moreover, because Santiago was not released from his parole revocation sentences for the 1991 convictions until 1994, the time period for which those convictions qualified as predicate offenses did not expire until 2009, well after the August 2006 conspiracy. Accordingly, Santiago was properly classified as a career offender.

We have reviewed the Defendants' remaining contentions, including Santiago's assertion that there was insufficient evidence to convict him of the crimes with which he

_____

offense" to include the distribution or dispensing of "a controlled substance (or a counterfeit substance)." USSG § 4B1.2(b).

[7] Santiago argues that his 1993 assault conviction did not constitute a proper career offender predicate offense. Because Santiago had other qualifying predicate offenses, whether the assault conviction was a proper predicate offense is immaterial.

was charged, and find them to be without merit.  Accordingly, we affirm Defendants' convictions and sentences.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED
