**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-4628

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

FREDRICK LAMONT MUNGRO, a/k/a Fred-Fred,

Defendant – Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Statesville.  Richard L. Voorhees, District Judge.  (5:04-cr-00018-RLV-CH-1)

Argued:  December 4, 2009          Decided:  February 18, 2010

Before WILKINSON and KING, Circuit Judges, and Henry E. HUDSON, United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED**: William Robert Terpening, Peter Crane Anderson, ANDERSON TERPENING, PLLC, Charlotte, North Carolina, for Appellant.  Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee.  **ON BRIEF**: Gretchen C. F. Shappert, United States Attorney, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Frederick Lamont Mungro appeals from his conviction by a jury in North Carolina for conspiracy to possess with intent to distribute cocaine base and cocaine powder. Mungro presents three contentions: first, that the district court erred in denying his motion for a new trial; second, that the court erred in admitting prosecution evidence; and, third, that his conviction contravenes the Fifth Amendment's Double Jeopardy Clause. As explained below, we reject these contentions and affirm.

I.

A.

On April 26, 2004, Mungro was indicted, along with ten others, by a grand jury in the Western District of North Carolina. The indictment alleged a single offense against Mungro: conspiracy to possess with intent to distribute at least 50 grams of cocaine base (commonly known as "crack"), and at least five kilograms of cocaine powder, in contravention of 21 U.S.C. § 846. According to the indictment, the conspiracy involved drug trafficking in Catawba County, North Carolina, from approximately 1995 to April 2004. After Mungro pleaded not guilty, he was tried in September 2005. Before trial, Mungro filed a motion in limine, seeking to exclude (1) evidence of his

2

participation in an earlier drug-trafficking conspiracy between 1993 and 1997, which ultimately led to his 1997 conviction in federal court and his subsequent incarceration; and (2) testimony regarding seven bags of marijuana and a set of hand scales seized from Mungro's vehicle in conjunction with his arrest on the 2004 indictment. In addition, Mungro sought a sequestration order from the trial court, pursuant to Federal Rule of Evidence 615, prohibiting witnesses from hearing the testimony of other witnesses and from discussing with one another any matters relating to the trial.

On September 13, 2005, Mungro's trial commenced and the district court entered a formal Sequestration Order, which was sent to the North Carolina jail where most of the witnesses in Mungro's case were being housed, with instructions that it be distributed to the various trial witnesses.[1] After hearing argument on Mungro's motion in limine, the court rejected his effort to exclude evidence. Regarding the earlier conspiracy prosecution, the court ruled that the Government could introduce evidence concerning Mungro's involvement in the earlier

---

[1] In pertinent part, the Sequestration Order prohibited any witness or potential witness from hearing the testimony of any other witness, from talking about prior trial testimony with any witness, and from talking "with anyone who will be or may become a witness about any subject related to this trial." J.A. 1759. (Citations herein to "J.A. ___" refer to the Joint Appendix filed by the parties in this appeal.)

conspiracy offense, as it related to the origins of the conspiracy charge in the indictment. The court acceded to Mungro's request, however, that a limiting instruction be given to the jury with respect to such evidence. Thus, the court — both during trial and after closing argument — gave the following instruction, to which Mungro agreed:

> Now, you will receive a special instruction now, and later, with respect to defendant Frederick Lamont Mungro. And that instruction is to the effect that he may not be held accountable for any conduct before January — on or about January 8, 1997. In other words, the conduct of his, if any, to which you are going to have reference with respect to holding him accountable for the conspiracy, if at all, all that conduct . . . would have had to have happened after January 8th, 1997. . . . [A]s to Mr. Mungro, you are instructed that you may only consider his conduct on — that is after January 8, 1997.

J.A. 589-90. The court also ruled that evidence regarding the seized marijuana and set of hand scales was admissible against Mungro pursuant to Federal Rule of Evidence 404(b), as such evidence demonstrated his intent to distribute a controlled substance. The court gave a limiting instruction to the jury with respect to that evidence as well.

In its case-in-chief, the prosecution presented several convicted felons who testified to engaging in drug-trafficking transactions with Mungro, including Warren England, Carlton Terry, Jamario Allred, Jermaine Anthony, Ernest Squarles, Fred Shuford, and Cameron Pope. The Government also presented the

4

testimony of two officers who had investigated Mungro. The Government's other evidence included Mungro's telephone records, as well as evidence regarding the marijuana and hand scales seized from Mungro's vehicle at his arrest. Following the prosecution's case-in-chief, Mungro presented several defense witnesses, including his own testimony. His own testimony included the assertion that most of the prosecution witnesses were liars and that the marijuana seized from him was for personal use. After hearing the evidence, arguments, and instructions, the jury convicted Mungro of the § 846 conspiracy offense and returned a special verdict finding him responsible for at least 50 grams of crack.

B.

On April 27, 2006, seven months after his trial, Mungro filed a motion for a new trial, pursuant to Federal Rule of Criminal Procedure 33.[2] First, Mungro contended that he had recently discovered evidence of witness perjury at trial and of violations of the Sequestration Order. Second, Mungro claimed that the Government had failed to disclose favorable and material evidence to him before trial, in contravention of Brady

---

[2] Rule 33(a) provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." A motion for new trial based on newly discovered evidence must be filed within three years of the verdict. See Fed. R. Crim. Proc. 33(b)(1).

5

v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972).

In support of his post-trial contentions, Mungro submitted several affidavits of inmates who had been housed with Government witnesses during his trial. First, he offered the affidavit of Travis Connor, who asserted that he had observed witnesses Anthony, Allred, and Shuford "reviewing discovery and discussing their testimony." J.A. 1818. Mungro also submitted the similar affidavit of Wani Logan. Logan swore that, in addition to the above-named witnesses, he had heard witness Terry discussing Mungro's trial with others. In addition, Logan stated that he had "overhead Jamario Allred talking . . . about how he was going to lie in the upcoming trial against Fred Mungro," because Allred was facing a fifteen-year sentence, and would "do anything" to be released. Id. at 1825. Next, Mungro submitted the affidavit of Bon Stroupe, who also stated that he had seen and heard witnesses Anthony, Allred, Shuford, and Terry reviewing discovery materials and discussing Mungro's case. Moreover, Stroupe asserted that he was Allred's cellmate, and that Allred had said he was going to "get his time cut" by testifying against Mungro. Id. at 1828. Finally, Mungro submitted the affidavit of Tim Davis, who swore that he "personally witnessed" Anthony, Allred, Shuford, and Terry

6

discussing the Government's case against Mungro during the trial. Id. at 1831.

In support of his claim that the Government had failed to turn over Brady and Giglio materials, Mungro relied on an unsigned draft affidavit prepared for another inmate, Chris Hayes. The Hayes draft recited that Hayes had been incarcerated in a cell with witness Shuford, who had talked openly about Mungro's prosecution. Shuford purportedly told Hayes that three potential Government witnesses — Dean Weaver, Chris Machichote, and Sherwood Gaither — intended to lie about Mungro at trial. According to the Hayes draft, after garnering this information, Hayes contacted a North Carolina detective, David Woodward, and an Assistant United States Attorney, Thomas O'Malley. Mungro also secured and submitted an affidavit from Detective Woodward, who stated that he and AUSA O'Malley met with Hayes prior to Mungro's trial. According to Woodward, Hayes informed them that Dean Weaver intended to lie at Mungro's trial. Although Woodward explained that he found Hayes neither "credible [n]or reliable," he and AUSA O'Malley nevertheless met with Weaver, whom they also deemed unreliable. J.A. 1836. In any event, the Government did not call Weaver as a trial witness, but did not inform Mungro of Hayes's disclosures or the Weaver meeting. Finally, Mungro supported his motion with an affidavit from Weaver, stating that witness Allred had reported that he had

7

lied during Mungro's trial in order to "work down his fifteen year sentence." Id. at 1839.

As a result of the new trial motion and its supporting materials, the district court conducted a four-day evidentiary hearing on Mungro's new trial motion, beginning on February 22, 2007. During the hearing, Mungro called the five prisoners whose affidavits he had submitted in support of his motion. Their testimony tracked their affidavits (including the Hayes draft), recounting instances of prosecution witnesses colluding in jail to "get their stories straight" and to review discovery materials. Hayes also testified about his pretrial interactions with Detective Woodward and AUSA O'Malley, as did Detective Woodward. In short, Mungro's five witnesses accused four of the Government's trial witnesses — Allred, Anthony, Shuford, and Terry — of violating the Sequestration Order and committing perjury. In response, each of those prosecution witnesses testified at the hearing. They explained that the Government had instructed them not to talk about Mungro's prosecution prior to and during trial, denied having violated the Sequestration Order, and maintained that they had not given perjured testimony.

C.

By a comprehensive order of May 13, 2008, the district court analyzed the contentions of the motion and the supporting

8

evidence, and denied the new trial request. See United States v. Mungro, No. 5:04CR18-1-V (W.D.N.C. 2008) (the "Order").[3] In addressing the witnesses relied upon by Mungro, the court found Chris Hayes's testimony to "lack all credibility"; noted that the credibility of both Wani Logan and Travis Connor was "doubtful"; and deemed the testimony of Mungro's remaining witnesses to be "less compelling." Order 5 n.4, 6. By contrast, the court found the hearing testimony of Government witness Fred Shuford to be especially credible, particularly because he had little to gain from lying and his testimony "bore the earmarks of truthfulness." Id. at 6 n.6. In addition, the court found that "[t]he weight of the totality of the evidence of violations of the sequestration order is further weakened by inconsistencies and apparent bias." Id. at 7. According to the court, "at most, the testimony of Connor, Davis, Stroupe, and Hayes shows that the four government witnesses had the opportunity to violate the Court's sequestration order." Id. at 8.

Moreover, the district court determined that, even if Mungro could establish that the Sequestration Order had been violated, he was not entitled to a new trial. Specifically, the court found that the new evidence, even if true, was unlikely to

---

[3] The district court's Order can be found at J.A. 2921-57.

result in an acquittal of Mungro in a new trial. See Order 14. For example, the court concluded that the bulk of the inculpatory evidence against Mungro came from the testimony of Carlton Terry and Ernest Squarles, whose testimony had been corroborated by telephone records. The court observed that, because Mungro had impeached Terry at trial with evidence similar to that presented in his motion for a new trial, any added impeachment value was minimal. Finally, the court emphasized that Allred, Anthony, and Terry had testified to purchasing differing quantities of drugs from Mungro in different transactions. In short, the Order concluded that:

> The evidence of sequestration order violations is weak and adds little impeachment value to witnesses who were already impeached at trial. Even as the Court strains to examine any potential occurrence of impropriety, it cannot conclude that this new evidence would likely have led to the acquittal of the Defendant. These three witnesses testified to independent transactions with the Defendant, and to the extent details of the transactions overlapped, these details were either tangential or overwhelmed by corroborative evidence.

Id. at 17 (footnote omitted).

Turning to the alleged Brady and Giglio violations, the district court discussed whether the Government was obliged to turn over the statements of Chris Hayes. The court credited Detective Woodward over Hayes on the content of those statements, finding that Hayes had a "poor reputation and character for truthfulness," as evidenced by his "zeal to

10

cooperate, sometimes at the expense of the truth." Order 23; see also id. 25 ("Hayes is willing to play fast and loose with the truth."). Accordingly, the court found that Hayes had disclosed only that Dean Weaver was going to lie at trial, and determined that the Government was able to derive from that disclosure that Weaver "was not likely to be truthful." Id. at 26. That determination, however, "had no direct relevance" to Mungro's prosecution, which rested primarily on the testimony of Terry and Quarles, as well as Mungro's telephone records. Id. And the court rejected Mungro's Brady contention to the extent it was predicated on what might have been uncovered had Mungro been advised of Weaver's potential credibility problems before trial. First, the court concluded that the Government's interviews with Hayes and Weaver did not lead to Brady or Giglio materials, as those interviews did not provide "any grounds to suspect that Weaver knew of any other witnesses who acted improperly." Id. at 28. Second, the court concluded that any evidence that Weaver might have provided to Mungro was immaterial because Weaver lacked credibility. See id. at 29.

Finally, the district court separately considered the implications of the Government's use of potentially perjured testimony by Jamario Allred. See Order 32 (citing United States v. Agurs, 427 U.S. 97 (1976)). The court concluded that the allegations of perjury by Allred "substantially lack[ed]

11

credibility," that the trial testimony of Allred was "both tangential and impeached," and that, once again, the "crux of the case against Defendant came by way of testimony by Terry, cell-phone records of Defendant, and the inability of the Defendant to explain away his connections . . . with Terry." Id. at 36. Accordingly, as with the other bases for the new trial motion, the court concluded that additional evidence of alleged witness perjury would not have affected the result of the trial. Consequently, the court denied Mungro's request for a new trial and sentenced him to life imprisonment. Mungro has noticed this appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

II.

We review for abuse of discretion a district court's denial of a motion for a new trial, even when predicated on a Brady or Giglio violation. See United States v. Stokes, 261 F.3d 496, 502 (4th Cir. 2001). We "may not substitute [our] judgment for that of the district court," but, instead, "must determine whether the court's exercise of discretion . . . was arbitrary or capricious." United States v. Mason, 52 F.3d 1286, 1289 (4th Cir. 1995). We also review for abuse of discretion a trial court's rulings on the admissibility of evidence. See United States v. Queen, 132 F.3d 991, 995 (4th Cir. 1997). Indeed, a

12

trial court's decision to admit evidence "will be upheld so long as it is not arbitrary or irrational." United States v. Hill, 322 F.3d 301, 306 (4th Cir. 2003) (internal quotation marks omitted). Finally, we review unpreserved issues, including those relating to the Double Jeopardy Clause of the Fifth Amendment, for plain error only. See United States v. Jarvis, 7 F.3d 404, 410 (4th Cir. 1993).

## III.

Mungro presents three contentions in this appeal. First, he maintains that the district court erred in denying his motion for a new trial. Second, he contends that the court abused its discretion in admitting certain trial evidence. Finally, Mungro asserts that his prosecution contravened the Double Jeopardy Clause, in light of the drug conspiracy offense for which he was convicted in 1997. We address these contentions in turn.

## A.

Mungro's first appellate contention, that the district court erred in denying his motion for a new trial, has two aspects. First, he maintains that the court should have awarded a new trial on the basis of newly discovered evidence of witness perjury and violations of the Sequestration Order, as shown at the post-trial hearing. Second, Mungro maintains that the court

13

should have awarded him a new trial as a result of the pretrial Brady and Giglio violations.

### 1.

We first address Mungro's assertion that he was entitled to a new trial on the basis of newly discovered evidence. We utilize a five-part test in evaluating such a motion: (1) the evidence must actually be newly discovered; (2) the court must be able to infer due diligence on the part of the movant; (3) the evidence must be more than merely cumulative or impeaching; (4) the evidence must be material; and (5) the evidence must be of the type that would "probably result in acquittal at a new trial." United States v. Chavis, 880 F.2d 788, 793 (4th Cir. 1989). Notably, newly discovered evidence that lacks credibility is unlikely to lead to an acquittal at a new trial. See United States v. McCullough, 457 F.3d 1150, 1167 (10th Cir. 2006).

Mungro asserts that a new trial was warranted by his post-trial showing that multiple prosecution witnesses had violated the Sequestration Order and presented perjured testimony. Under our Chavis precedent, however, these allegations did not entitle Mungro to a new trial. First, Mungro faces an insurmountable hurdle with respect to the third Chavis factor, as his allegation that the prosecution witnesses lied at trial is merely cumulative and impeaching. Whether the prosecution's

14

witnesses lied about their drug transactions with Mungro would merely assist in impeaching those witnesses, not in disproving whether Mungro actually engaged in such transactions. See United States v. Custis, 988 F.2d 1355, 1359 (4th Cir. 1993) ("This circuit has emphasized that new evidence going only to the credibility of a witness does not generally warrant the granting of a new trial."). Moreover, as the Order explained, Mungro's allegations with respect to witness Carlton Terry were simply cumulative, as Mungro had impeached Terry at trial with evidence similar to that relied on in his new trial request. See Order 15.

More significantly, Mungro cannot overcome the final hurdle of the Chavis test, i.e., that the newly discovered evidence would "probably result" in acquittal at a new trial. As the district court concluded in its Order, Mungro's prosecution was primarily predicated on the evidence of Terry and Earnest Squarles, and the corroboration of their testimony by telephone records. Simply put, nothing advanced by Mungro in the new trial proceedings would undercut Squarles's testimony or the corroborating telephone records. Moreover, the court discredited the bulk of the evidence used by Mungro in support of his new trial motion. That credibility determination stands in stark contrast to the court's finding, for example, that the testimony of one of the Government's witnesses at the new trial

15

hearing, Fred Shuford, bore the "earmarks of truthfulness." Order at 6 n.6. Finally, the court determined that the indication of "overlap" in the drug transaction evidence against Mungro was weak, as the alleged perjurers had testified to different quantities of crack as part of different transactions. In such circumstances, the court did not abuse its discretion in denying the new trial motion, to the extent it was predicated on newly discovered evidence of witness perjury and violations of the Sequestration Order.

2.

We turn next to the second aspect of Mungro's new trial contention — that he was entitled to relief because the Government contravened its Brady and Giglio obligations. To secure a new trial on such grounds, Mungro had the burden of showing that (1) the undisclosed evidence was favorable to him; (2) the evidence was material; and (3) the prosecution possessed the evidence yet failed to disclose it. See United States v. Stokes, 261 F.3d 496, 502 (4th Cir. 2001).[4] To be "material,"

---

[4] The Government points out that the Brady contention more accurately involves the Government's obligations under Giglio, as Mungro would have used the sought-after evidence for impeachment purposes. See Giglio v. United States, 405 U.S. 150, 154-55 (1972) (including impeachment evidence within scope of Brady materials). Because Giglio was simply an extension of the Brady rule, however, we are content to refer to this contention as the "Brady contention."

16

there must be a reasonable probability that disclosure of the evidence in question would have produced a different outcome. See id.

According to Mungro, the Government contravened its Brady obligations when it failed to disclose or fully investigate the Hayes disclosure that several of its witnesses planned to lie at trial. Mungro, however, is unable to overcome two significant obstacles to his Brady contention: first, that the district court found the evidence in support of the new trial motion, including that of Hayes himself, to lack credibility; and, second, that the supposed perjurer identified by Hayes, Dean Weaver, did not testify at trial.

First, Mungro's Brady contention fails with respect to the materiality analysis, as the district court found that the evidence in support of his new trial motion lacked credibility. The Brady claim rests primarily on Hayes, whom the court found to be entirely unreliable. The court explained that Hayes had demonstrated a "zeal to cooperate," even at the expense of the truth, and that he had lied to the Government on prior occasions. Order 23-25. In addition, the court emphasized that Hayes's testimony was not helpful to Mungro, as Hayes confirmed that Mungro had been involved in drug transactions with Carlton Terry. Id. at 26.

17

Second, the Brady contention fails because Weaver, the alleged perjurer identified by Hayes, did not testify at Mungro's trial.[5]  Indeed, the district court found that the Government had never intended to use Weaver as a trial witness. See Order 28 n.31.  Rather, Weaver was on the prosecution's witness list as a potential witness against a codefendant who pleaded guilty before trial.  As such, even if Weaver intended to lie at trial, Mungro failed to show how such a disclosure would have aided his defense.  Indeed, the prosecution's case against Mungro was predicated primarily on the testimony of Terry and Squarles, as well as corroborating telephone records. And Hayes's statement that Weaver intended to lie simply does not undercut that evidence.  Simply put, Hayes's disclosure, as well as the Government's determination that Hayes and Weaver were unreliable, did not provide the prosecution with "any grounds to suspect that Weaver knew of any other witnesses who acted improperly."  Id. at 28.  Finally, the court found that Weaver, like Hayes, lacked credibility, and that any evidence that Weaver might have provided the defense was thus immaterial. In these circumstances, particularly on the evidence presented

---

[5]  In contrast to Mungro's assertion about Hayes, the district court found that Hayes had only revealed to Detective Woodward and AUSA O'Malley that Dean Weaver — not other Government witnesses — intended to lie at trial.  See Order 26.

18

at the new trial hearing and the credibility determinations subsequently made in the Order, the court did not abuse its discretion in denying Mungro's motion for a new trial.

B.

Mungro next contends that the district court abused its discretion in admitting certain trial evidence. Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Such evidence — commonly called "similar act" evidence — may be admissible, however, "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). Evidence sought to be admitted under Rule 404(b) must also satisfy Rule 403, which provides a limited bar to otherwise-admissible evidence. See United States v. Siegel, 536 F.3d 306, 319 (4th Cir. 2008).[6] We have articulated a four-prong test for assessing the admissibility of evidence under Rule 404(b):

> (1) the prior-act evidence must be relevant to an issue other than character, such as intent; (2) it must be necessary to prove an element of the crime

_____

[6] Pursuant to Rule 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

19

> charged; (3) it must be reliable; and (4) . . . its probative value must not be substantially outweighed by its prejudicial nature.

United States v. Queen, 132 F.3d 991, 995 (4th Cir. 1997) (internal quotation marks omitted). Importantly, Rule 404(b) is "an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition." United States v. Young, 248 F.3d 260, 271–72 (4th Cir. 2001) (emphasis added) (internal quotation marks omitted).

Mungro maintains that the district court abused its discretion in admitting evidence regarding the bags of marijuana and set of hand scales seized from Mungro's vehicle when he was arrested. He argues, first, that this evidence was irrelevant, and, second, that the prejudicial nature of the evidence substantially outweighed its probative value. That Mungro possessed individually bagged marijuana and the set of hand scales, however, tends to prove his intent to distribute a controlled substance, the absence of mistake, and his guilty knowledge, which were at issue because Mungro was charged with possession with intent to distribute controlled substances. Mungro's assertion, as he testified at trial, that he possessed

20

the marijuana for personal use only presented a credibility issue for the jury, not an issue of admissibility.[7]

Finally, on the Rule 403 balancing test, Mungro has failed to show that the similar act evidence was unfairly prejudicial. As the Government contends, evidence showing Mungro's intent to distribute marijuana — during the time frame and in the geographic location of the alleged conspiracy — was probative of his intent to possess and distribute other controlled substances. Moreover, the district court properly gave a limiting instruction to the jury, explaining that Mungro was not being tried for a "marijuana charge," and that any evidence that Mungro possessed marijuana "should never be taken as indicating directly whether the defendant committed the offense charged in the indictment." J.A. 458-59. Under these circumstances, the court did not abuse its discretion in admitting evidence of the marijuana and hand scales seized from Mungro upon his arrest.

---

[7] It is also of no moment that the seven bags seized at Mungro's arrest contained marijuana, whereas Mungro was being prosecuted for distributing crack and cocaine powder. See United States v. Hawkins, 548 F.3d 1143, 1147 (8th Cir. 2008) (ruling that Rule 404(b) evidence "need not involve the same illegal drug as the charged offense" (internal quotation marks omitted); United States v. Hernandez, 84 F.3d 931, 935 (7th Cir. 1995) (concluding that prior marijuana conviction could be admitted under Rule 404(b) in prosecution for distributing cocaine and heroin).

C.

Finally, Mungro contends that his conviction contravenes the Double Jeopardy Clause of the Fifth Amendment, which "prohibits successive prosecution or multiple punishments for 'the same offence.'" Witte v. United States, 515 U.S. 389, 391 (1995).[8]   Thus, the Double Jeopardy Clause forbids the prosecution from dividing "a single criminal conspiracy into multiple violations of a conspiracy statute." United States v. Cole, 293 F.3d 153, 158 (4th Cir. 2002) (internal quotation marks omitted). Mungro predicates this unpreserved contention on the fact that he was convicted in 1997 for his involvement in a crack conspiracy that took place between 1993 and 1997 (the "first conspiracy"), and that the conspiracy alleged in the indictment occurred between 1995 and April 2004 (the "second conspiracy"). As a result of the "overlap" from 1995 to 1997, Mungro contends that the district court "improperly permitted [him] to be prosecuted twice for substantially the same crime." Br. of Appellant 62.

At trial, however, Mungro objected on double jeopardy grounds only to the admission of certain evidence concerning the two-year overlap. He did not, by contrast, move to dismiss the

---

[8] The Double Jeopardy Clause provides: "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V.

22

indictment or assert that his prosecution for the second conspiracy somehow contravened the Double Jeopardy Clause. We have already determined that a double jeopardy challenge must be raised in the district court or it will be forfeited on appeal. See United States v. Jarvis, 7 F.3d 404, 409 (4th Cir. 1993). Because Mungro failed to preserve this issue in the district court, we review it for plain error only. Id. at 410. Under the plain error standard, Mungro bears the burden of showing that (1) an error occurred, (2) the error was plain, and (3) it affected his substantial rights. See United States v. Olano, 507 U.S. 725, 732 (1993). If he makes such a showing, the correction of such error lies within our discretion, which we "should not exercise . . . unless the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (internal quotation marks and alterations omitted).

Under the plain error standard of review, Mungro's double jeopardy contention plainly lacks merit. In assessing whether successive conspiracy charges constitute the "same offense" for purposes of the Double Jeopardy Clause, we employ a "totality of the circumstances" test that focuses on five factors: (1) the time periods covered by the two conspiracies; (2) the places where the conspiracies are alleged to have occurred; (3) the persons charged as co-conspirators; (4) the overt acts allegedly

23

committed in furtherance of the two conspiracies, or any other descriptions of the offenses charged that indicate the nature or scope of the activities being prosecuted; and (5) the substantive statutes alleged. See United States v. Ragins, 840 F.2d 1184, 1888-89 (4th Cir. 1988).

The Government is correct in asserting that, under the Ragins test, there is no indication that Mungro's prosecution was plainly inconsistent with the Double Jeopardy Clause. First, although the conspiracies slightly overlap time-wise, none of the overt acts alleged in the second conspiracy occurred during the first conspiracy. On the third Ragins factor, Mungro is the only common defendant among the sixteen defendants in the first conspiracy and the eleven defendants in the second conspiracy.[9] On the fourth Ragins factor, the Government concedes that both conspiracies involved the distribution of crack and powder cocaine, but maintains that the first conspiracy involved a supplier from Georgia, whereas the second conspiracy involved a supplier from North Carolina. In sum, only two of the Ragins factors — the second and fifth — weigh in Mungro's favor, that is, both conspiracies concern criminal

---

[9] The prosecution emphasizes, for example, that Mungro did not even meet one of his primary coconspirators in the second conspiracy (Carlton Terry) until he had been incarcerated for the first conspiracy.

24

activity in Catawba County and involve violations of 21 U.S.C. § 846.

In sum, our application of the Ragins factors in this context does not suggest that Mungro's conviction on the first conspiracy was for the "same offence" as his prosecution for the second conspiracy. Moreover, the jury was carefully instructed on the limited time frame that it could consider regarding Mungro's alleged participation in the second conspiracy. See J.A. 590 ("[A]s to Mr. Mungro, you are instructed that you may only consider his conduct on — that is after January 8, 1997."). Under these circumstances, the district court did not err in allowing Mungro's prosecution on the second conspiracy to proceed. As a result, plain error has not been shown, and the double jeopardy contention must also be rejected.

IV.

Pursuant to the foregoing, we reject Mungro's contentions and affirm.

AFFIRMED

25